**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOMINCK P. CAROLLO,<br>STEVEN E. GOLDBERG, and<br>PETER S. GRIMM,<br><br>Defendants. | S1-10-CR-654 (HB) |
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER GHAVAMI<br>(aka PETER GHAVAMILAHIDJI),<br>GARY HEINZ, and<br>MICHAEL WELTY,<br><br>Defendants. | 1:10-CR-01217 (KMW) |

**OPPOSITION OF UBS PRIVILEGE HOLDERS TO
APPLICATION OF UNITED STATES FOR AN ORDER TO DISCLOSE TO
DEFENDANTS PORTIONS OF MEMORANDA OF INTERVIEW THAT ARE
CLAIMED TO BE ATTORNEY-CLIENT PRIVILEGED OR WORK PRODUCT**

Christopher N. Manning (CM-4231)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C.  20005
Tel.   (202) 434-5000
Fax.   (202) 434-5029
Email   cmanning@wc.com

*Counsel for UBS AG, UBS Financial
Services, Inc., and UBS Securities LLC*

## Table of Contents

BACKGROUND ........................................................................................................................ 2
    A.    The UBS 302s. .................................................................................................. 2
    B.    The Zaino Email. ............................................................................................. 4
    C.    Efforts Taken by UBS to Protect Its Privilege. .............................................. 5
ARGUMENT ............................................................................................................................. 6
    I.    THE UBS 302s AND THE ZAINO EMAIL CONTAIN COMMUNICATIONS PROTECTED BY UBS'S ATTORNEY-CLIENT PRIVILEGE. ........................... 6
    II.    THE ZAINO EMAIL IS ALSO PROTECTED BY THE WORK PRODUCT DOCTRINE. ................................................................................................. 10
    III.    A RULE 502(D) ORDER DOES NOT PROTECT UBS'S PRIVILEGE. ............ 11
CONCLUSION ....................................................................................................................... 13

EXHIBITS

    A.  UBS Privilege Log

    B.  Declaration of David Levy, Esq.

    C.  Declaration of John G. Moon, Esq.

    D.  Declaration of Pamela Peterson, Esq.

    E.  Declaration of Daniel Levinson

    F.  Declaration of Patricia Williamson, Esq.

    G.  Declaration of Louis J. Barash, Esq.

    H.  Declaration of Ilene Marquardt, Esq.

    I.  Zaino Email (submitted *in camera*)

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Business Integration Serv., Inc. v. AT&T Corp.*, 251 F.R.D. 121 (S.D.N.Y. 2008) ........................7

*Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343 (1985) ................................5, 7

*Fitzpatrick v. AIG, Inc.*, 272 F.R.D. 100 (S.D.N.Y. 2010) ...............................................................7

*Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*, No. 08-civ-1533, 2011 WL 2020586
    (S.D.N.Y. May 20, 2011) ...........................................................................................................8

*In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) .........................................................................6

*In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407 (N.D. Ill. 2006) ..........................................8-9

*Martin v. Monfort, Inc.*, 150 F.R.D. 172 (D. Colo. 1993) .............................................................11

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004) ..............10

*Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491 (D.N.H. 1996) .........................11

*Surles v. Air France*, No. 00-civ-5004, 2001 WL 815522 (S.D.N.Y. July 19, 2001) ....................8

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ..............................................................10

*United States v. Defonte*, 441 F.3d 92 (2d Cir. 2006) .............................................................. 9-10

*United States v. Dist. Council*, No. 90-cv-5722, 1992 WL 208284 (S.D.N.Y. Aug. 18,
    1992) ........................................................................................................................................11

*United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers
    of Am., AFL-CIO,* 119 F.3d 210 (2d Cir. 1997) ........................................................................7

*United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) ............................................................. 12-13

*United States v. Polichemi*, No. 94-CR-555, 1996 WL 332680 (N.D. Il. June 24, 1996) ............10

*Upjohn Company v. United States*, 449 U.S. 383 (1981) .....................................................7, 8, 9 13

*Winans v. Starbucks Corp.*, No. 08-civ-3734, 2010 WL 5249100 (S.D.N.Y. Dec. 15,
    2010) .........................................................................................................................................8

## **OTHER AUTHORITIES**

FED. R. EVID. 502 ..............................................................................................................1, 6, 11, 12

Third-Party Intervenors UBS AG, UBS Financial Services, Inc. and UBS Securities LLC (collectively, "UBS") submit this Opposition to the government's Application for an Order To Disclose To Defendants Memoranda of Interview that Are Claimed To Be Attorney-Client Privileged or Attorney Work Product, filed by on March 15, 2012 (the "302 Application").[1]  The 302 Application seeks an order authorizing the government to use and disclose two FBI 302 memoranda (the "UBS 302s") memorializing statements by its informant Mark Zaino, a former UBS employee, that reveal the substance of privileged communications between UBS employees and UBS counsel.  The government also seeks the right to disclose an additional email written by Zaino (the "Zaino Email") that contains similarly privileged information.  The government requests an order, pursuant to Federal Rule of Evidence 502(d), finding that the disclosure and use of the UBS materials will not constitute a waiver of the attorney-client privilege or work product doctrine.  These materials have already been obtained by the government's taint team, and in some cases the taint team has already disclosed them to government trial and defense counsel— without redaction, without notice to UBS, and without a ruling by the Court.

As explained below, the relief sought by the government would breach UBS's privilege and is unsupported by law.  Nor can the government use Rule 502 to justify its invasion of privilege.  Accordingly, UBS respectfully moves for an Order directing the government to claw back the privileged materials and prohibiting any further use or disclosure in unredacted form.

This is the second Application that the government has filed in these proceedings seeking authorization to disclose UBS's privileged information.  The government previously sought permission to disclose (among other things) five audio recordings of conversations that reveal the substance of privileged communications between UBS employees and UBS counsel (the

---

[1] UBS is referred to as Privilege Claimant 6 in the 302 Application.

"UBS Recordings"), asserting many of the same arguments it raises again here (the "Audio Recordings Application"). Doc. No. 118 [*Carollo*]; 84 [*Ghavami*]. The 302s and the related Zaino Email, like the audio recordings that were the subject of the government's earlier Application, contain information plainly protected by UBS's attorney-client privilege (and, in the case of the email, by the work product doctrine).

## BACKGROUND

**A.     The UBS 302s.**

The two UBS 302s, which were created by government agents as part of the government's investigation, summarize two government interviews of Mark Zaino, a then-current UBS employee who was serving as a cooperating government witness. In both 302s, the government elicited from Zaino detailed descriptions of privileged communications that he or other UBS employees had had with UBS counsel. In almost all instances, the privileged communications are the same as those that were captured on the UBS Recordings.[2] The declarations submitted with UBS's prior submission (and one new declaration)—all undisputed—confirm that (1) the communications were for the purpose of gathering information to provide legal advice to UBS, and (2) the UBS employees were informed during the respective communications that such communications were privileged, that the privilege belonged to UBS, and that the communications were not to be disclosed to other persons.

---

[2] In Opposition to the Audio Recordings Application, UBS attached declarations from the UBS counsel who participated in those communications and confirming the employment of the UBS participants on the recordings. UBS has attached these same declarations to this Opposition (since the 302s relate to the same privileged communications). *See* Decl. of David Levy, Esq. (Ex. B) ("Levy Decl."); Decl. of John G. Moon, Esq. (Ex. C) ("Moon Decl."); Decl. of Pamela Peterson, Esq. (Ex. D) ("Peterson Decl."); Decl. of Daniel Levinson (Ex. E) ("Levinson Decl."). UBS also submits an additional declaration from the UBS in-house counsel who participated in the one privileged communication captured in the 302s that was not also disclosed on the UBS Recordings. *See* Decl. of Patricia Williamson (Ex. F) ("Williamson Decl.").

As with the UBS Recordings, UBS is not asserting privilege over the entirety of the UBS 302s—which the government has not provided to UBS in their entirety, only the excerpts that it has identified as potentially privileged—but rather only over the portions that capture the discussion of communications with UBS counsel. Attached as Exhibit A is a privilege log for these two UBS 302s. The following is a summary of the relevant excerpts:

*302 dated May 23, 2006.* This 302 discloses the specific contents of a conversation between Zaino, while an employee of UBS, and UBS in-house counsel (Pamela Peterson) and UBS outside counsel as part of counsel's gathering of information for the purpose of providing legal advice to UBS.[3] The 302 also discloses the specific contents of a separate conversation between Zaino, again while an employee of UBS, and UBS in-house counsel (Patricia Williamson) as part of counsel's gathering of information to provide legal advice to UBS.

*302 dated September 8, 2006.* This 302 discloses the specific contents of a conversation that another then-current UBS employee (Daniel Irvin) had had with UBS in-house counsel (David Levy) as part of counsel's gathering of information for the purpose of providing legal advice to UBS. The 302 also discloses the specific contents of a conversation that Gary Heinz, then a former UBS employee, had had with UBS in-house counsel (David Levy) as part of counsel's gathering of information for the purpose of providing legal advice to UBS. Finally, the 302 discloses the specific contents of a conversation that Mark Zaino, then a UBS employee, had had with UBS in-house counsel (Pamela Peterson) and UBS outside counsel as part of counsel's gathering of information for the purpose of providing legal advice to UBS.[4]

---

[3] The content of this same conversation was revealed on *CR-000011-002*, one of the UBS Recordings at issue in the Audio Recordings Application.

[4] The content of these same conversations described in the 302 dated September 8, 2006 also was revealed on three of the UBS Recordings at issue in the Audio Recordings Application: *CR-1000000013-68*, *CR-1000013-32*, and *CR-000011-002*, respectively.

The government has told UBS that it has already produced the UBS 302s to the defendants and to the government's trial teams in the *Carollo* and *CDR* cases without redacting the above-identified portions of the 302s.  These disclosures were made as recently as October 31, 2011—just a day before the government first notified UBS of the existence of the first UBS Recording.  However, the government did not disclose the existence of the UBS 302s to UBS until March 2012, and it never sought UBS's authorization (or a court order) to obtain or disclose UBS's privileged information.  The government has produced redacted versions of these 302s in the *Ghavami* case, but it has refused to claw back the unredacted versions already disclosed.

**B.       The Zaino Email.**

On March 20, 2012, five days after the government filed its 302 Application, it identified for UBS an additional document raising the same privilege issues: an email sent by Zaino on November 24, 2006 in which he describes a meeting he had had with several then-current and former UBS employees.  A copy of the Zaino Email, marked to show the portion over which UBS is asserting privilege, has been submitted to the Court *in camera* as Exhibit I.

Like the UBS Recordings and UBS 302s, the Zaino email reveals the specific contents of prior conversations that Zaino had had, while an employee of UBS, with UBS in-house counsel (Pamela Peterson) and UBS outside counsel as part of counsel's gathering of information for the purpose of providing legal advice to UBS.[5]  The Zaino Email also describes the direction given by UBS to certain law firms (Orrick Herrington & Sutcliffe LLP and Wachtell, Lipton, Rosen & Katz).   Finally, the Zaino Email reveals Michael Welty, a then-former UBS employee,

---

[5]  The privileged communications disclosed in this email are the same communications referenced in the May 23, 2006 302 and the UBS Recording *CR-000011-002*.

4

purporting to discuss the opinions and mental impressions of PaineWebber[6] counsel regarding potential defenses in connection with the yield-burning investigation in the mid-1990s. Attached are two additional declarations in support of UBS's assertion of its attorney-client privilege and the work product doctrine over this material. *See* Decl. of Louis J. Barash, Esq. (Ex. G) (Barash Decl.); Decl. of Ilene Marquardt, Esq. (Ex. H) ("Marquardt Decl.").

The government has told UBS that it has already produced the Zaino Email in unredacted form to the defendants and government trial teams in the *CDR, Carollo* and *Ghavami* cases. As with the 302s, the government did so without consulting UBS or seeking a court order.

**C.    Efforts Taken by UBS to Protect Its Privilege.**

UBS has taken repeated and consistent efforts to protect its privilege. Upon learning of the UBS 302s on March 6, 2011, UBS informed the government the next day that it intended to notify the Court and asked the government (1) to claw back the privileged portions of the UBS 302s already disclosed in unredacted form; and/or (2) to secure the agreement of all recipients of these materials (both government trial and defense counsel teams) not to further review, use or disclose them, pending the Court's consideration of these issues. After the government rejected this request, on March 8, 2012, UBS wrote the Court to assert its privilege and request the opportunity to brief the issue. With regards to the Zaino Email, UBS informed the government on March 21, 2012, one day after the government disclosed the existence of the email, that it was asserting privilege over portions of the email, and identified for the government the portions of the email over which it was asserting privilege a few days later.

---

[6] UBS acquired PaineWebber Inc. in or around November 2000. "When control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *CFTC v. Weintraub*, 471 U.S. 343, 349 (1985).

**ARGUMENT**

In its prior Audio Recordings Application, the government made two arguments: (i) that the UBS Recordings do not contain any communications protected by the attorney-client privilege, and (ii) even if they do, that the privilege was waived by the UBS employees' disclosure of the privileged communications to non-attorney third parties. Here, the government is <u>not</u> advancing the waiver argument; as the government conceded in its Reply in support of its Audio Recordings Application, it has no factual basis to sustain that argument.[7] Instead, here the government relies entirely on its assertion that the 302s do not contain privileged material. For the same reasons set forth in UBS's Opposition to the Audio Recordings Application, this argument finds no support.

In addition, the government advances a new position: that the entry of a Order pursuant to Federal Rule of Evidence 502(d) "would adequately protect all parties." Mem. at 7. This argument fares no better, for (a) Rule 502(d) provides no basis for the government selectively to use a private party's privileged information, and (b) a 502(d) Order will not prevent the public disclosure of privileged communications that the law gives UBS the right to keep confidential.

**I.   THE UBS 302s AND THE ZAINO EMAIL CONTAIN COMMUNICATIONS PROTECTED BY UBS'S ATTORNEY-CLIENT PRIVILEGE.**

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). A party invoking the privilege must show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept

---

[7] "To the extent that the Corporate Privilege Claimants . . . contend that their former employees were not authorized to waive any privilege held by the corporate employer, the Government is not in a position to contest such factual assertions now." Reply Mem. of the U.S. in Support of its App. for an Order Resolving Claims of Attorney-Client Privilege or Attorney Work Product as to Consensual Recordings, at 7 n.3 (Mar. 1, 2012).

confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419.  Where the client is a corporation, it is well established that "any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee." *United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 119 F.3d 210, 215 (2d Cir. 1997).[8]  Thus, the privilege here belongs to UBS—not its current or former employees or the government's informant—and the corresponding authority to assert or waive the privilege rests with UBS.  *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985).

The communications disclosed in the UBS 302s and the Zaino Email satisfy the elements of the attorney-client privilege: (1) they were communications between UBS employees and UBS counsel, (2) that were intended to be confidential, and (3) that were made for the purpose of allowing UBS counsel to provide legal advice to UBS.  *See* Exhibits B ¶¶ 3-5 (Levy Decl.); C ¶¶ 3-6 (Moon Decl.); D ¶ 3 (Peterson Decl.); F ¶ 3 (Williamson Decl.); G ¶ 2 (Barash Decl.); H ¶ 2 (Marquardt Decl.).  Contrary to the government's characterization of the 302s as describing the conversations "in summary fashion," Mem. at 5, the UBS 302s and the Zaino Email describe in detail the specific content of communications between UBS employees and UBS counsel and the details regarding the representation.  These communications are the very type that the Supreme Court found to be protected by a corporation's attorney-client privilege in *Upjohn Company v. United States*, 449 U.S. 383 (1981), the seminal case holding that communications made by corporate employees to corporate counsel are protected by the corporation's privilege.  *Id.* at 394.  As the Court held, "the privilege exists to protect not only the giving of professional advice

---

[8] *See also Fitzpatrick v. AIG, Inc.*, 272 F.R.D. 100, 107 (S.D.N.Y. 2010) ("[T]he attorney-client privilege belongs to the corporation."); *Business Integration Serv., Inc. v. AT&T Corp.*, 251 F.R.D. 121, 123 (S.D.N.Y. 2008) ("privilege lies with the client, in this case AT&T").

7

to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.[9]  The privileged nature of these types of communications is well-established. *See Winans v. Starbucks Corp.*, No. 08-civ-3734, 2010 WL 5249100, at *2 (S.D.N.Y. Dec. 15, 2010) (collecting cases). Accordingly, both the UBS 302s and the Zaino Email contain communications protected by UBS's attorney-client privilege.[10]

The government's lead argument—that the 302s are not protected by UBS's attorney-client privilege because they "[t]hey do not reflect conversations between a client and his or her counsel," Mem. at 5—fundamentally misstates both UBS's position and the relevant legal inquiry. As noted above, UBS is not contending that the entirety of the UBS 302s or the Zaino Email is protected by the attorney-client privilege. Rather, UBS is asserting privilege over only those portions that reveal prior, privileged communications with UBS counsel.

Moreover, contrary to the government's suggestion, "the privilege issue is not settled by authorship or participation. The question is whether the communications rest on confidential information obtained from the client, or would reveal the substance of a confidential communication by the client." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill.

---

[9] The Supreme Court reasoned that "[m]iddle-level and indeed lower-level-employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Upjohn Co.*, 449 U.S. at 391.

[10] The fact that one of the UBS employees, Gary Heinz, was a former employee at the time of his communications with UBS counsel does not alter the privileged nature of such communications. "Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment." *Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*, No. 08-civ-1533, 2011 WL 2020586, at *5 (S.D.N.Y. May 20, 2011) (collecting cases); *see also Surles v. Air France*, No. 00-civ-5004, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001) (same). That is exactly the case here, where Heinz was being questioned by in-house counsel regarding issues concerning Heinz's former employment at UBS. *See* Ex. B ¶ 3 (Levy Decl.); Ex. C ¶ 5 (Moon Decl.).

2006).  Thus, the relevant question is <u>not</u> whether the UBS 302s and Zaino Email were themselves communications with corporate counsel, but rather whether they "reveal the substance" of privileged communications between UBS counsel and UBS employees.  For the reasons given above, they do.

The government also contends that the 302s do not contain privileged information because "[i]n most cases, there is no indication that the conversations being described by the cooperating witness were made for the purposes of giving or obtaining legal advice."  Mem. at 5.  However, as with the prior Audio Recordings Application, UBS again has provided the Court with multiple, undisputed declarations from the UBS attorneys who participated in these conversations to confirm that they <u>were</u>, in fact, for the purpose of gathering information to provide legal advice to UBS.

The government further asserts that the attorney-client privilege does "not protect disclosure of the underlying facts by those who communicated with the attorney."  Mem. at 6.  While this is a correct statement of law, it is irrelevant to the issues before the Court.  UBS is not claiming privilege over "underlying facts," but rather over the detailed descriptions of the prior *communications* with UBS counsel.  As even the government concedes, the "privilege . . . protects disclosure of communications."  *Id.* (quoting *Upjohn Co.*, 449 U.S. at 395).

Finally, the government states that it "has determined that some of the memoranda contain potential *Giglio* and therefore should be disclosed as soon as possible."  Mem. at 4.  This does not justify the government's invasion of UBS's privilege.  As an initial matter, the government fails to identify any *Giglio* material in the privileged excerpts.  In any event, the fact that certain material may be considered *Giglio* material does not overcome a well-founded claim of privilege or work product.  *See United States v. Defonte*, 441 F.3d 92, 95 (2d Cir. 2006)

9

(holding that material protected by witness's attorney-client privilege "is not subject to discovery" even though Defendant claimed it was *Giglio* material);*United States v. Polichemi*, No. 94-CR-555, 1996 WL 332680, at *1-2 & n.4 (N.D. Ill. June 14, 1996) (ordering the production to defendants of all *Brady* and *Giglio* facts, but not any material protected by work-product or attorney-client privilege).  It certainly offers no basis for the government unilaterally to elicit and disclose such materials prior to seeking a court order and affording the privilege holder the opportunity to protect its rights.

## II. THE ZAINO EMAIL IS ALSO PROTECTED BY THE WORK PRODUCT DOCTRINE.

In addition to being protected by the attorney-client privilege, one excerpt from the Zaino Email is protected by the work-product doctrine.  That excerpt captures Michael Welty, then a former UBS (previously PaineWebber) employee, disclosing the opinions and mental impressions of PaineWebber counsel regarding potential defenses available to the company in connection with the yield-burning investigation in the mid-1990s.

The work-product doctrine "provides that materials prepared in anticipation of litigation are not discoverable absent a showing that the party seeking discovery has a substantial need for materials and cannot obtain the equivalent without undue hardship."  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 444 (S.D.N.Y. 2004).  The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries."  *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (internal quotations omitted).  Documents that "tend to reveal the attorney's mental process . . . receive special protection" under the work-product doctrine because "at its core, the work-product doctrine shelters the mental processes of

10

the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* at 1197 (internal quotations omitted).

The Zaino Email excerpt falls within the protection afforded by the work-product doctrine. It purports to disclose the mental processes of PaineWebber's counsel regarding potential defenses in connection with the yield-burning investigation. *See* Ex. H ¶ 2 (Marquardt Decl.). It also reflects opinions that had been formed "in anticipation of litigation," in connection with an ongoing government investigation. *See Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 513 (D.N.H. 1996) ("[C]ourts recognize that 'investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger the application of the work product doctrine.'") (quoting *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993)).

The government suggests that because there is no "written work product discussing legal theories or strategies," the work-product doctrine does not apply. Mem. at 6. That is not true. As courts have recognized, "[a]lthough the work product doctrine is most commonly applied to documents and things, unjustified disclosure of the opinions or mental processes of counsel" are protected regardless of whether they are reduced to writing or not. *United States v. Dist. Council*, No. 90-cv-5722, 1992 WL 208284, at *7 (S.D.N.Y. Aug. 18, 1992). The information in the Zaino Email excerpt satisfies the work-product standard; nothing more is required.

### III. A RULE 502(D) ORDER DOES NOT PROTECT UBS'S PRIVILEGE.

The government contends that "regardless of whether the interview memoranda . . . are protected by any privilege," an "entry of an Order pursuant to Fed. R. Evid. 502(d) would adequately protect all parties." Mem. at 7. This is incorrect and does not justify the invasion of UBS's privilege.

Federal Rule of Evidence 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding."  As the Advisory Committee Notes make clear, this rule was <u>not</u> intended to be used to permit the selective disclosure of privileged material, but rather to protect against the risk of inadvertent disclosure in large productions by "enabl[ing] a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery."  FED. R. EVID. 502, advisory committee's notes.  In fact, the advisory committee notes explicitly state that this provision "does not provide a basis for a court to enable parties to agree to a selective waiver of the privilege," and that "acquiescence by the disclosing party in use by the federal agency of information disclosed pursuant to such an order would still be treated as under current law for purposes of determining whether the acquiescence in use of the information, as opposed to its mere disclosure, effects a waiver of the privilege."  *Id.*  Thus, a 502(d) Order was not intended for situations such as this one, nor does it provide any basis for the government selectively to elicit, use, and disclose a private party's privileged information.

Finally, a Rule 502(d) Order would do nothing to protect UBS from the public dissemination and use of its privileged material at trial, which is one of the central purposes of the attorney-client privilege.  The "underlying purpose" of the privilege is to provide a "protection of confidentiality" that will "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (quoting

12

in part *Upjohn Co.*, 449 U.S. at 389). An order that permits public disclosure of privileged communications would eviscerate the "protection of confidentiality" that the privilege is intended to protect. This is of particular importance here, where UBS remains a defendant in a number of civil lawsuits arising from the government's investigation.

## CONCLUSION

For the foregoing reasons, the 302 Application should be denied insofar as it seeks to produce the UBS 302s and the Zaino Email in unredacted form. In addition, the Court should issue a claw-back order directing the immediate return of the unredacted versions of these documents and prohibiting any further use or disclosure of them.

Dated:   April 6, 2012                    Respectfully submitted,

**WILLIAMS & CONNOLLY LLP**

By:   /s/ Christopher N. Manning (CM 4231)
      Christopher N. Manning (CM 4231)

      725 Twelfth Street, N.W.
      Washington, D.C.  20005
      Tel.   (202) 434-5000
      Fax.   (202) 434-5029
      Email  cmanning@wc.com

      *Counsel for UBS AG, UBS Financial Services, Inc., and UBS Securities LLC*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on April 6, 2012, I caused the foregoing Opposition of UBS Privilege Holders to Application of United States for an Order To Disclose To Defendants Portions of Memoranda of Interview that Are Claimed To Be Attorney-Client Privileged or Work Product to be served upon the attorney of record for each party by transmission through the Court's electronic filing system.

                                                 /s/ Christopher N. Manning
                                                 Christopher N. Manning (CM 4231)