UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                             :

UNITED STATES OF AMERICA           :
                                             :

            v.                        :

                                             :

PETER GHAVAMI,                   :            1:10-cr-01217-KMW
(aka PETER GHAVAMILAHIDJI);    :
GARY HEINZ; and               :
MICHAEL WELTY,             :
                                             :

                      Defendants.           :

                                             :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT SUGGESTING THE ABSENCE OF CRIMINAL ACTIVITY IN TRANSACTIONS NOT REFERENCED IN THE BILL OF PARTICULARS

DEIRDRE A. McEVOY
Chief, New York Field Office
Antitrust Division
United States Department of Justice

KALINA M. TULLEY
JOHN W. VAN LONKHUYZEN
JENNIFER M. DIXTON
MICHELLE O. RINDONE
Trial Attorneys, Antitrust Division
United States Department of Justice
209 South LaSalle Street, Suite 600
Chicago, IL 60604
(312) 353-7530

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES...............................................................................................ii

INTRODUCTION.............................................................................................................1

BACKGROUND...............................................................................................................2

ARGUMENT.....................................................................................................................4

    A.  The Absence of Criminal Conduct in Transactions that are Not Part of the
         Government's Case-in-Chief is Irrelevant and Inadmissible Under Rule 402................4

    B.  Defendants' Introduction of Audio and Documentary Evidence of Uncharged
         Transactions Would Constitute an Improper Attempt to Introduce Propensity Evidence
         of Defendants' Good Character, Will Confuse the Jury and Will Waste Time...............7

    C.  Any Marginal Relevance the Evidence Might Have for Purposes Other than Propensity
         to Act Lawfully is Substantially Outweighed by the Risk of Confusing the Jury.........10

    D.  If the Court Finds that This Issue is Not Ripe, It Should Require Defendants to Give
         Immediate Notice of the Specific Audio, Documentary, and Testimonial Evidence of
         Transactions Not Listed in the Bill of Particulars That Defendants Intend to Present at
         Trial So That the Government May Evaluate the Relevance of Those Transactions and
         Such Evidence Prior to Trial.........................................................................................12

CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir. 1984) ................................................. 11

*United States v. Benedetto* 571 F.2d 1246 (2d Cir. 1978) ............................................................. 8

*United States v. Bowe*, 360 F.2d 1 (2d Cir. 1966) ....................................................................... 10

*United States v. Doyle*, 130 F.3d 523 (2d Cir. 1997) ..................................................................... 9

*United States v. Garcia*, 291 F.3d 127 (2d Cir. 1992) .................................................................. 10

*United States v. Glaze*, 313 F.2d 757 (2d Cir. 1963) ................................................................. 3, 6

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978) ............................................................... 4

*United States v. Groezinger*, 625 F. Supp. 2d 145 (S.D.N.Y. 2009) ........................................... 12

*United States v. Jimenez*, 513 F.3d 62 (3d Cir. 2008) ................................................................. 11

*United States v. Michelson*, 335 U.S. 469 (1948) ..................................................................... 7, 8

*United States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ........... 5

*United States v. Perez*, No. 09 CR 1153, 2011 WL 1431985 (S.D.N.Y. Apr. 12, 2011) .............. 5

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) ............................................................. 9

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*, No. 09 Cr. 1058, 2011 WL 6130812

   (S.D.N.Y. Dec. 7, 2011) ....................................................................................... 1, 11, 12

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ............................................................. 4, 7

*United States v. Walker*, 191 F.3d 326 (2d Cir. 1999) ........................................................ 4, 5, 6, 7

## OTHER AUTHORITIES

22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure—Evidence*
§ 5267 (1st ed. 1978) .................................................................................................... 9

David P. Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events* § 4.9
(2009) ...................................................................................................................... 12

## FEDERAL STATUTES

Fed. R. Evid. 104 ............................................................................................................ 1

Fed. R. Evid. 402 ........................................................................................................ 1, 4

Fed. R. Evid. 403 ...................................................................................................... 1, 10

Fed. R. Evid. 404 ................................................................................................... passim

Fed. R. Evid. 404(b) ....................................................................................................... 2

Fed. R. Evid. 405 ................................................................................................ 1, 2, 8, 9

Fed. R. Evid. 405(a) ....................................................................................................... 2

Rule 404(a)(2)(A) ........................................................................................................... 7

## I.   INTRODUCTION

The Government respectfully moves this Court, pursuant to Fed. R. Evid. 104, 402, 403, 404, and 405, for an order prohibiting Defendants from introducing evidence pertaining to transactions outside the final Bill of Particulars ("BOP").  The Government would like to preclude the Defendants from introducing in their case evidence of other, as yet unidentified but specific transactions and audio recordings where they purportedly did not break the law, and any claim that such evidence undermines the Government's proof that Defendants possessed the intent to defraud as to transactions identified on the BOP and featured in its case-in-chief.  In *United States v. Rubin/Chambers Dunhill Insurance et al.*, an analogous case, Judge Marrero observed that evidence of similarly unspecified, uncharged transactions could, at least, be marginally relevant to the question of Defendants' intent in that case, provided that the unspecified, uncharged transactions shared the same "objective characteristics" as the transactions listed on the Government's BOP.  *See United States v. Rubin/Chambers, Dunhill Ins. Servs.*, No. 09-CR-1058, 2011 WL 6130812, at *7 (S.D.N.Y. Dec. 7, 2011).

Here, Defendants cannot make this essential connection because, given the many differences among the charged and uncharged transactions, Defendants cannot demonstrate the same "objective characteristic" among the transactions.  Such similarity in "objective characteristics" is a prerequisite to properly establish relevancy.  Furthermore, even if Defendants were to establish that the uncharged evidence was somehow relevant to Defendants' intent with respect to the charged conduct and the transactions identified in the BOP, such evidence should nonetheless be excluded given that the marginal relevance of any uncharged transactions is substantially outweighed by the inevitable waste of time and jury confusion that such evidence will create.  *See* Fed R. Evid. 403.  Evidence of uncharged transactions outside of the BOP should therefore be excluded pursuant to Fed. R. Evid. 402.

The introduction of evidence unrelated to the transactions identified in the BOP will only confuse the jury.  There is, moreover, substantial risk that such evidence will permit the jury to draw the impermissible inference of propensity regarding Defendants' character – namely that because Defendants may not have manipulated bids and defrauded issuers and the IRS on every transaction in which they participated, then Defendants did not do so as to transactions charged in the Superseding Indictment ("Indictment").  Such evidence, however, is barred by Fed. R. Evid. 405(a) (prohibiting use of specific acts to prove character), and Fed. R. Evid. 404(b) (prohibiting use of specific acts to show character for propensity purposes).  Indeed, as a briber or bank robber cannot introduce instances where she met an official and did not offer a bribe, or where she went into a bank and did not rob it, so too here:  Defendants should not be permitted to present evidence of uncharged transactions where they may have acted lawfully.

## II.    BACKGROUND

On September 15, 2011, a federal grand jury sitting in this district returned an Indictment charging all Defendants with two counts of conspiracy to commit wire fraud and one substantive wire fraud count.[1]  The Indictment alleges that Defendants engaged in a series of conspiracies and schemes to defraud municipal bond issuers by means of false or fraudulent pretenses, representations, and promises.  These schemes deprived municipal bond issuers and the IRS of money and property by causing them to award investment agreements and other municipal finance contracts at artificially determined or suppressed interest rates, and deprived the municipal bond issuers of the property right to control their assets by causing them to make economic decisions based on false and misleading information.

---

[1] Count Four charges only Defendants Heinz and Welty with conspiracy to commit wire fraud and Count Five charges only Defendant Heinz with wire fraud.  In addition, Count Six charges Defendant Heinz with witness tampering in violation of 18 U.S.C. § 1512(b).

The Government has never alleged that every transaction involving the investment of municipal bond proceeds was corrupt, nor has the Government suggested that Defendants could and did win any transaction they pleased.  Rather, as the Indictment makes clear, these were crimes of opportunity.  Not every bid was manipulated.  Clearly, because the Government has never asserted that every single transaction was corrupted by Defendant's conduct, any evidence of instances where Defendants did not, or could not, manipulate a particular investment agreement has no bearing whatsoever on whether the specific transactions identified in the BOP were manipulated.  That BOP identifies and "strictly limit[s]" what the Government will prove in its case-in-chief.  *See United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963).  At trial, Defendants will have ample opportunity to contest the Government's theory as to each of the specific transactions for which the Government intends to offer evidence.  Defendants should not, however, be permitted to introduce evidence of and cross-examine witnesses about transactions that have no relevance to the charged conduct.

While Defendants have not yet indicated that they intend to introduce evidence relating to uncharged transactions involving investment agreements that were competitively bid and where the favored provider did not win, they requested such a list from the Government.  From this evidence, Defendants will apparently suggest that some of the transactions which were not charged were not manipulated and that there was no continuing agreement to manipulate bids.  This suggestion is improper.  Evidence pertaining to transactions that are *not* identified on the final BOP, unless it is integrally related to testimony about a charged transaction, probative of Defendants' knowledge and/or intent, or provides related context for a charged transaction, is not otherwise relevant to the charged conduct.  Therefore, such evidence does not qualify as proper non–propensity reverse 404(b) evidence.

### III.   ARGUMENT

#### A.   The Absence of Criminal Conduct in Transactions that are Not Part of the Government's Case-in-Chief is Irrelevant and Inadmissible Under Rule 402.

Defendants should not be permitted to assert that the lack of criminality in uncharged transactions is relevant to proving their innocence as to the charged transactions.  This evidence is irrelevant, and "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.  Because "[e]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant," *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978), the Court should exclude any evidence relating to purportedly "innocent" uncharged transactions if Defendants elect to present such evidence at trial.

Well-established Second Circuit precedent precludes the admission of evidence offered to show the absence of criminal conduct.  In *United States v. Walker*, 191 F.3d 326 (2d Cir. 1999), a defendant convicted of preparing false immigration asylum applications appealed his conviction, arguing that the District Court erred by excluding evidence that he prepared other legitimate asylum applications.  The Second Circuit affirmed that conviction, holding that evidence that the defendant prepared legitimate applications was "simply irrelevant" to whether defendant committed the charged crime of preparing false applications.  *Id.* at 336.  Similarly, in *United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990), the defendants appealed the District Court's refusal to admit taped evidence purporting to show their innocuous conduct.  The Second Circuit affirmed the District Court, holding that the tapes were irrelevant and inadmissible because "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."  *Id.* at 1011 (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)).

Following these principles, District Courts within the Second Circuit have routinely granted Government motions *in limine* to exclude evidence of uncharged innocuous conduct. *See, e.g., United States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) (where the defendants were charged in a broad health care fraud conspiracy, and the indictment charged fraudulent billing practices "with respect to a limited number of patients," the court excluded as irrelevant evidence that the defendant legitimately billed for some Medicare and Medicaid covered procedures in uncharged instances);[2] *United States v. Perez*, No. 09-CR-1153, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (excluding as irrelevant evidence that the defendant acted legitimately when preparing asylum applications in uncharged cases, where the defendant was charged with a fraudulent scheme to prepare specific asylum applications).

Defendants cannot defend these charges and undermine their culpability with respect to the transactions listed in the BOP by attempting to show they acted lawfully with respect to other transactions. The fact that Defendants are charged with conspiracies does not transform every transaction into an overt act in furtherance of those conspiracies. Nor are those other transactions inextricably intertwined with the charged offenses. The charges in *Walker* similarly included a broad conspiracy to make false statements to the INS and to commit mail fraud based on an immigration attorney's and his interpreter's "extensive pattern of fraudulent asylum applications to the INS." 191 F.3d at 330-31. Like the crimes of opportunity in the instant case, not every asylum application by the defendants in *Walker* was fraudulent or was an act in furtherance of the conspiracy. In *Walker*, the Court did not permit the defendants to introduce

---

[2] *Nekritin* recognizes a possible exception for cases where the Government alleges "ceaseless, all-encompassing criminal conduct." 2011 WL 2462744, at *5. Here, the Government does not allege "ceaseless, all-encompassing" criminal conduct as to every bid submitted by Defendants. Rather, the Government charged that "on numerous occasions" Defendants and others conspired to manipulate the competitive bidding process; moreover, the Government has identified a limited number of transactions that were part of the charged misconduct.

the honest applications in order to disprove fraudulent intent because whether they "prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent." *Id.* at 336.  Here, this Court should similarly grant the Government's motion *in limine* to exclude evidence of any transactions that Defendants purport are legitimate and that are not part of the Government's BOP, because such evidence is not relevant to the charged conduct in this case and will only prolong the trial and confuse the jury.

The heart of the Government's case involves representations and certifications that Defendants forwarded or caused to be forwarded to municipal bond issuers and their bond counsel.  These certifications were in fact false with respect to the transactions the Government intends to introduce during its case-in-chief.[3]  Municipal bond issuers and bond counsel relied on these false representations and certifications and, consequently, the municipal issuers and the IRS were defrauded by Defendants and their co-conspirators into believing that certain investment agreements and other municipal finance contracts were competitively bid, when it fact they were not.  Evidence of other, legitimately bid transactions is wholly irrelevant to whether Defendants defrauded municipal issuers by, among other things, forwarding or causing to be forwarded false representations and certifications relating to the charged transactions. Absent a connection to a BOP transaction and the attendant false representations, other evidence – whether audio recordings, documents, or testimony – of uncharged transactions that are alleged to have been legitimately bid is not relevant, and this Court should not admit such evidence.

Other than the fact that both charged and uncharged transactions involved investment agreements for municipal bond proceeds, it would be unlikely that uncharged transactions could

---

[3]  The Government does not contend there was no fraud absent the false representations and certifications. Indeed, the signed false representations and certifications are simply manifestations of Defendants' intent to defraud and represent one of the many means and methods of the charged conspiracies.  Nor does the Government concede that only these transactions were fraudulent.

share many or most of the same objective characteristics as the charged transactions.  Indeed, these types of complicated financial transactions typically have many different variables such as the investment product structure, type and credit rating of issuer, total dollar amount, maturity date, collateral requirements, credit restrictions, and the state of credit markets at that point in time.  These transactions occurred in markets where relevant rates of interest are changing on a continual basis.  Matching these factors with the varied risk appetites and competitive abilities of the relevant financial institutions makes comparison between different transactions very difficult, if not impossible.  And even assuming Defendants manage to find a matching and legitimate transaction, the fact that they did not manipulate and defraud issuers or the IRS on that transaction tells the jury nothing about Defendants' intent regarding the transactions the Government seek to prove at trial.  Rather, showing their "innocence" on a particular transaction merely asks the jury to make the inference that innocent action on one transaction shows that Defendants acted innocently on the charged transactions.  That is the very inference the Second Circuit forbade in *Walker* and *Scarpa*.  Therefore, evidence of purportedly innocent transactions should be excluded from trial.

      **B. Defendants' Introduction of Audio and Documentary Evidence of Uncharged Transactions Would Constitute an Improper Attempt to Introduce Propensity Evidence of Defendants' Good Character, Will Confuse the Jury and Will Waste Time.**

      Rule 404(a)(2)(A) codifies the common-law rule that a defendant may introduce evidence of his own character.  *See United States v. Michelson*, 335 U.S. 469, 476 (1948) (permitting defendant to "introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged").  Despite Rule 404(a)(2)(A), Defendants cannot introduce purportedly innocuous conduct in uncharged transactions.  Such proffered evidence violates the established principles that a

person's character cannot be proven through evidence of specific acts, and that specific acts cannot be used to prove action in conformity therewith on other occasions.

In *Michelson*, the Court held that a character witness "may not testify about defendant's specific acts or courses of conduct." 335 U.S. at 477. Instead, such a witness can only testify as to the defendant's reputation, or offer an opinion as to the defendant's character. Rule 405 codifies this by only permitting, as evidence of character, "testimony about the person's reputation," or "testimony in the form of opinion." Fed. R. Evid. 405(a). Under the rule, evidence of specific acts is limited to cross-examination, *id.*, or to cases where character "is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).

Any attempt by Defendants to introduce evidence of innocuous conduct with respect to uncharged transactions in order to prove character would violate Rule 405(a), which prohibits the use of specific acts as evidence under these circumstances. The Second Circuit so held in *United States v. Benedetto,* 571 F.2d 1246 (2d Cir. 1978), where a Government meat inspector was convicted of accepting bribes from four meat processing plants he inspected. The Court held that "the defense improperly attempted to establish defendant's good character by reference to specific good acts" when it introduced testimony that he did not accept bribes at other plants. *Id.* at 1247-48. There, the defense improperly used the specific instances of not accepting bribes to try to show that the defendant's character made it unlikely that he would have accepted the charged bribes. In this case, it is equally improper to use specific instances of uncharged transactions where bids were purportedly not manipulated to suggest that Defendants' character makes it unlikely that they manipulated bids on transactions that the Government has identified as manipulated in the BOP and that it will prove as part of its case-in-chief.

Further, specific act evidence is not admissible under Rule 405(b), which limits introduction of specific act evidence to cases where character is an essential element of the crime. As 405(b) makes clear, that exception to the general prohibition on specific act evidence is available *only* where some substantive law makes character an issue. *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997); *see also* 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure – Evidence* § 5267 (1st ed. 1978) ("relatively few" cases fall under Rule 405(b)). In this case, the elements of the charged crimes relate to Defendants' intent and knowledge. The Defendants' character is plainly not an element of any of the charged offenses. *See Doyle*, 130 F.3d at 542 (treating intent and knowledge as elements that can be refuted by specific character acts would "distort[] Rule 405 beyond recognition").

Rule 404(b) precludes the use of acts other than those involving the charged crimes "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) applies to defendants who seek to introduce non-criminal transactions to advance their defense. *See United States v. Quattrone*, 441 F.3d 153, 191-92 (2d Cir. 2006) (excluding evidence of legitimate emails where the defendant was charged with obstruction relating to a specific email reminding employees of the document retention policy, because Rule 404(b) prohibits use of "specific acts of good character . . . to prove [defendant's] action in conformity therewith").[4] Although the rule permits the admission of prior acts for purposes *other than* the defendant's propensity to act in conformity therewith, *see* Fed. R. Evid. 404(b); *United States v. Garcia*, 291 F.3d 127, 135 (2d

---

[4] Despite the broad language in *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984), Rule 404(b) applies with full force to Defendants' use of evidence relating to uncharged transactions. *Aboumoussallem* is inapposite because it considered similar acts of *someone else* to challenge identity and establish an alibi (a proper non-propensity purpose). Here, the Government seeks to prevent the introduction of specific non-charged transactions relating to the Defendants to prove they did not have the propensity to commit the offenses charged.

Cir. 1992), Defendants should not be allowed to introduce evidence of their allegedly lawful conduct in uncharged transactions precisely because the jury may draw the forbidden propensity inference.  Any attempt by Defendants to argue that transactions not charged as part of the conspiracies or schemes are relevant and that they fall within the parameters of permitted uses under Rule 404(b) would be spurious.  Those transactions where the Defendants did not fully exploit the opportunities given them do not undermine the Government's contention that Defendants and others entered into conspiracies and schemes to defraud issuers and the IRS for the awarding of municipal investment contracts.

Rule 404(b) squarely prohibits introducing non-criminal conduct to show that a defendant has the propensity *not* to act criminally.  Defendants should be precluded from introducing evidence of purportedly legitimate transactions that are not listed in the Government's BOP so that the jury will infer that Defendants acted in conformity with that lawful character.  This evidence should be excluded because, as Rule 404(b) recognizes, the use of other acts evidence becomes arguably relevant to the defense *only if* the jury draws the forbidden propensity inference.

> **C.  Any Marginal Relevance the Evidence Might Have for Purposes Other than Propensity to Act Lawfully is Substantially Outweighed by the Risk of Confusing the Jury.**

Even if evidence of Defendants' purportedly innocuous conduct was admissible for a purpose other than to prove Defendants' propensity, the Court should exclude the evidence under Rule 403 because its probative value "is substantially outweighed by a danger of," among other things, "confusing the issues, misleading the jury . . . [and] wasting time."  Fed. R. Evid. 403.  Permitting Defendants to introduce evidence relating to allegedly legitimate transactions would risk creating an improper "trial within a trial."  *See United States v. Bowe*, 360 F.2d 1, 16 (2d Cir. 1966).  Indeed, the Court in *Rubin/Chambers* acknowledged the Government's concern

regarding the amount of time it would necessarily take to admit such uncharged evidence, noting that the "prosecutors will be *compelled* to assail the legitimacy of the Uncharged Transaction at issue and will present evidence to counter the inference advanced by Defendants."  2011 WL 6130812, at * 7 (emphasis added).  Allowing Defendants to introduce evidence of uncharged transactions would require the jury to determine whether or not they engaged in criminal conduct in *those* transactions.  Such evidence is, therefore, excludable because it improperly misleads the jury and is not relevant to Defendants' intent.  *See Aboumoussallem*, 726 F.2d at 912 (upholding district court's exclusion under Rule 403 of defendant's evidence about uncharged conduct); *cf. United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (upholding district court's limitations on defendant's cross-examination with respect to uncharged conduct under Red. R. Evid. 403).

Further, allowing Defendants to introduce evidence of an untold number of transactions merely to attempt to establish that they acted honestly on those occasions, when the BOP does not allege those other transactions were manipulated, creates the potential to confuse the issues and mislead the jury.  The Government intends to prove the charges in the Indictment through, among other things, evidence relating to transactions specified in the BOP.   If specific instances of other uncharged transactions are introduced, the jury will be required to assess the objective similarity between those transactions and the BOP specified transaction.  Asking the jury to make such evaluations will waste time.  Moreover, the presence of such uncharged transactions will likely confuse and mislead the jury with respect to the transactions that the Government alleges were in fact affected and corrupted or manipulated by the conspiracies.

**D.** **If the Court Finds that This Issue is Not Ripe, It Should Require Defendants to Give Immediate Notice of the Specific Audio, Documentary, and Testimonial Evidence of Transactions Not Listed in the Bill of Particulars That Defendants Intend to Present at Trial So That the Government May Evaluate the Relevance of Those Transactions and Such Evidence Prior to Trial.**

If the Court declines to rule at this time on this motion, or denies it without prejudice, the Government requests that the Court order Defendants to give prompt notice of what evidence, if any, they intend to introduce in their case relating to uncharged transactions – whether in the form of audio recordings, documentary evidence, or testimony.[5]

Such notice is reasonable given that the Government has provided Defendants with its list of audio recordings that the Government intends to introduce during its case-in-chief. The Government requests Defendants provide the unique "Call ID" of any audio recordings along with a designation of the portion of the recording sought to be introduced in connection with any uncharged transaction. The Government requires sufficient notice to review Defendants' transcripts for these audio recordings for accuracy and context within the transaction. Notice will also allow the Government to respond with a motion *in limine,* if appropriate, to challenge the admissibility of that evidence. Such an *in limine* motion would prevent the "risk of polluting the jury" by reference to inadmissible evidence, as well as prevent undue delay to trial. *See David P. Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events* § 4.9 (2009). Lastly, immediate notice provides an opportunity to resolve the issue without unduly interfering with trial preparation. *See United States v. Groezinger*, 625 F. Supp. 2d 145, 159 (S.D.N.Y. 2009) (citing *United States v. Fennell*, 496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007)).

---

[5]  The court in *Rubin/Chambers* acknowledged the need for such notice by requiring defendants in that case to provide advance notice to the Government of uncharged transactions they intended to offer at trial sufficient to enable the Government to challenge the admissibility of that evidence. 2011 WL 6130812, at *8

The Government further requests that if Defendants fail to comply with the requested notice requirement, all uncharged other acts evidence that is the subject of this motion *in limine* be ruled inadmissible if Defendants seek to introduce such evidence during trial.

**IV.     CONCLUSION**

The Government requests that the Court enter an order in advance of trial prohibiting Defendants from introducing any audio recording, documentary, or testimonial evidence of, or presenting any argument to the jury about, or otherwise referencing the absence of criminal activity in any transactions that are not identified on the final BOP.

Alternatively, the Government requests an order requiring Defendants to provide immediate notice in advance of trial of the nature of any extrinsic acts evidence they intend to offer, the purpose for which this evidence will be offered, the unique "Call ID" along with a designation of the portion of the recording sought to be introduced, and mandating that any

failure by Defendants to comply with this notice requirement will result in the

inadmissibility of such evidence pertaining to transactions not listed in the final BOP.


Dated: June 25, 2012
      New York, New York

                        Respectfully submitted,

                        /s/ *Kalina M. Tulley*
DEIRDRE A. McEVOY          KALINA M. TULLEY
Chief, New York Field Office     JOHN W. VAN LONKHUYZEN
Antitrust Division             JENNIFER M. DIXTON
United States Department of Justice   MICHELLE O. RINDONE
                        Trial Attorneys, Antitrust Division
                        United States Department of Justice
                        209 South LaSalle Street, Suite 600
                        Chicago, IL 60604
                        (312) 353-7530