USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/26/12

U.S. Department of Justice

Antitrust Division

**MEMO ENDORSED**

*Midwest Field Office*

*Rookery Building*  312/353-7530
*209 South LaSalle Street, Suite 600*
*Chicago, Illinois 60604*  *FAX 312/353-1046*

July 25, 2012

**FACSIMILE TRANSMITTAL**

The Honorable Kimba M. Wood
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <u>United States v. Ghavami, et al. 10 CR 1217 (KMW)</u>

Dear Judge Wood:

      The Court has asked the Government to indicate in writing the nature and scope of the evidence that it will seek to introduce at trial concerning the SEC's yield-burning investigation. That investigation focused on the practice of overcharging municipalities for government securities purchased for a type of municipal investment agreement known as an escrow that had the effect of reducing or "burning" off yield that would otherwise have been received by the federal government. At the time, these purchases of government securities were accomplished through negotiation, rather than through the competitive bidding that became the norm. As set forth in the Government's Opposition to Defendants' Motion *in Limine* to exclude such evidence, the SEC's yield-burning investigation provides necessary background for and insight into the current regulatory framework for tax-exempt municipal bonds. Indeed, Defendants concede that "[t]he SEC's yield burning investigation led to the issuance in 1998 of the Treasury regulations that are implicated in this case." Def. Mot. 2.

      Consistent with efforts to streamline its case-in-chief, the Government will elicit very limited testimony about the SEC's yield-burning investigation. The Government does not intend to introduce documents that relate to the history or purpose of the yield-burning investigation, nor, contrary to Defendants' suggestion, to elicit testimony that UBS was part of a global settlement concluding the yield-burning investigation. Rather, certain cooperating witnesses will take a few minutes on direct examination to briefly explain that, after the SEC's yield-burning investigation became public in the mid-1990s and, in response to the practices revealed during that investigation, the Treasury issued

regulations that created a competitive bidding framework that could be used to determine the fair market value of an investment agreement.[1] The competitive bidding process set forth in the regulations, in fact, became the preferred method for determining fair market value and that process is the essential backdrop for the conduct at issue in this prosecution.[2]

In addition to this limited background testimony, the Government expects that Mark Zaino will testify about a reference to the yield-burning investigation by Defendants Heinz and Welty during a luncheon meeting in 2006. At that meeting, Heinz asked Welty, who was working on the relevant desk at Paine Webber, a subject of the yield-buining investigation at the time it was ongoing, how he had handled questions about his conduct. Welty replied that he had claimed to have no recollection of the events about which he was questioned. No further explanation of the yield-burning investigation from Zaino will be necessary due to the limited background testimony on the significance of the yield-burning investigation described above.

Respectfully submitted,

*Kalina Tulley* /sr

KALINA M. TULLEY
JOHN W. VAN LONKHUYZEN
JENNIFER M. DIXTON
MICHELLE O. RINDONE

Trial Attorneys

Cc: All counsel (via email)

> The Government is directed to produce more details re. this testimony (a draft script, or a voir dire of the witness(es), to permit the Court to make a Rule 403 ruling. If a draft script is used, it should be faxed to the Court by 1 p.m. today (fax: 212-805-7900).
>
> SO ORDERED, N.Y., N.Y.  7/26/12
>
> *Kimba M. Wood*
> KIMBA M. WOOD
> U.S.D.J.

---

[1] Although the competitive bidding provisions in the regulations are commonly referred to as a competitive bidding "requirement," in fact competitive bidding creates only a presumption, or "safe harbor" that the value of an investment agreement determined through competitive bidding is at fair market value.

[2] Defendants contend that the government's primary theory in this case is that "issuers were victims of fraudulent schemes, so any reference to the yield-burning investigation in the 1990s, in which the federal government alone was allegedly cheated, is inapplicable." Def. Mot. 2. Defendants' characterization of the Government's theory is incorrect. The Indictment clearly identifies the U.S. Treasury and the IRS as victims of the conspiracies and fraud alleged in this case.