POE & BURTON PLLC

THE EXECUTIVE BUILDING

1030 15TH STREET, N.W., SUITE 580 WEST

WASHINGTON, D.C. 20005

WWW.POEBURTON.COM

Tel: (202) 583-2500

Fax: (202) 583-0565

gpoe@poeburton.com

May 24, 2013

<u>Via Hand Delivery</u>

The Honorable Kimba M. Wood

United States District Court for the

  Southern District of New York

500 Pearl Street

New York, NY 10007

Re:   <u>*United States* v. *Ghavami, et al.*, No. 1:10-cr-01217-KMW</u>

Dear Judge Wood:

     We write on behalf of counsel for defendants Peter Ghavami, Gary Heinz, and Michael Welty, and respectfully request that Your Honor consider this letter in response to the Surreply to Defendants' Reply Sentencing Memoranda ("Surreply") that the government filed on May 22, 2013. We understand that the government did not seek permission to file the Surreply. Given the government's extraordinary position that the Court should impose draconian terms of incarceration for the three individuals, we respectfully believe that this response is appropriate in light of certain statements in the Surreply.

     The Surreply is yet another example of how the government's shifting approach to the loss calculation is designed to ratchet up the sentences without regard to the reliability of the information before the Court. At the outset, the government inaccurately claims that we are attempting to hold a "second trial" and that disputed loss issues except for the regression analysis were already "decided against [defendants] by the jury." Surreply at 1; *id.* at 2 ("The Court should not hold a second trial."); *id.* at 3 (jury decided as to Count 4 that Peter Grimm provided "initial bids" and not "indications"). We recognize the law in the Second Circuit governing the scope of the Court's discretion with respect to evidentiary hearings in the sentencing context. We are not attempting to relitigate issues decided by the jury. We respect the jury verdict. Instead, the government fails to recognize that a general verdict on multiple object conspiracies does not mean that the jury has decided particular disputed factual issues against defendants for purposes of sentencing. See Welty Opening Mem. at 22-23.

     The government states that the Court can "dispense with an evidentiary hearing" as to broker fees on the ground that the exclusion of such fees would result in "only a *2-level* reduction for

POE & BURTON PLLC

The Honorable Kimba M. Wood
May 24, 2013
Page 2

Defendant Welty" and "would make *no* difference" for Messrs. Ghavami and Heinz and thus "would make *little difference* in the Guidelines calculations." Surreply at 4 (last emphasis added). According to the government's own guideline calculations, however, a two-level difference for Mr. Welty would result in a 108-135 month range instead of a 135-168 month range. The government's assertion that the shortening by 27-33 months of a putative sentencing range makes "little difference" is stunning in light of the government's position that the Court should impose a guideline sentence.

We agree with the government that an evidentiary hearing on broker fees is unnecessary – although our position is based on the premise that the information before the Court shows that broker fees are not properly included in the loss calculation. Notably, the Surreply does not address the analysis in our reply memorandum on behalf of Mr. Welty (at 11-14) showing why broker fees do not constitute loss. Instead, the government – citing a document that was not even placed before the jury, which is in plain tension with its (incorrect) theory that the jury already decided the loss issues except for the regression analysis – merely repeats the flawed argument made in its sentencing memorandum that the entitlement of issuers to a *bona fide* competitive bidding process necessarily translates into a conclusion that broker fees constitute loss. Surreply at 2.

In a similar vein, the government states that the Court need not hold an evidentiary hearing and can exclude from the loss calculation the $3,836,969 in supposed gain for Counts 1 and 2 based on its regression analysis for 13 transactions because the result ostensibly "would still leave each defendant well above the $2.5 million threshold for a +18 loss adjustment[.]" Surreply at 4. Again, if the government is conceding that its regression analysis need not be considered, and that the Court may exclude $3,836,969 from the loss calculation, then we agree that an evidentiary hearing is not necessary on that point. We disagree, however, that defendants would remain above the $2.5 million threshold if the regression analysis is excluded from the loss calculation.

As to Mr. Welty, the exclusion of the $3,836,969 regression analysis figure would result in a loss figure above $2.5 million only if the Court attributes to him the gain to UBS on the Rhode Island Tobacco transaction on Count 1 ($725,000), the broker fees on Counts 2 and 4 ($760,050), the swap fees and ostensible kickbacks on Counts 2 and 4 ($1,969,600), and the "fraudulently lowered interest rates" on Count 4 ($373,010.31). For the reasons that we have stated in our opening and reply memoranda, none of those figures is accurate. With respect to the issue of "fraudulently lowered interest rates," for example, the Surreply fails to address the analysis in our reply memorandum on behalf of Mr. Welty (at 14-15) showing that its calculation is faulty. Indeed, the government even ignores the contradictions that we have identified in Mark Zaino's testimony concerning bids and indications (*id.*) while simultaneously asserting that the jury somehow decided that Mr. Grimm provided "initial bids" and not indications in Count 4 transactions. Surreply at 3.

POE & BURTON PLLC

The Honorable Kimba M. Wood
May 24, 2013
Page 3

As to Mr. Ghavami, the exclusion of the $3,836,969 regression analysis figure would result in a loss figure above $2.5 million only if the Court attributes to him the gain to UBS on the Rhode Island Tobacco transaction on Count 1 ($725,000), the broker fees on Count 2 ($203,400), the swap fees and ostensible kickback on Count 2 ($894,600), and the ostensible gain to Bank of America on Count 3 ($2,000,000). On behalf of counsel for Mr. Ghavami, we state that none of those figures is accurate for the reasons stated in Mr. Ghavami's opening and reply memoranda. For example, Mr. Ghavami argues that, given the nature of the bidding on the "Mass I" transaction underlying Count 3 (and that it was won at the perfect cost), no loss even exists to allow the use of a gain analysis. He also asserts that the broker fees, swap fees, and purported kickbacks are wrongly included by the government in its loss analysis. (Ghavami Opening Memo. at 4-8 and Reply Memo. at 6-11.)

As to Mr. Heinz, the exclusion of the $3,836,969 regression analysis figure would result in a loss figure above $2.5 million only if the Court attributes to him the gain to UBS on the Rhode Island Tobacco transaction on Count 1 ($725,000), the broker fees on Counts 2, 4, and 5 ($775,050), the swap fees and ostensible kickbacks on Counts 2 and 4 ($1,969,600), the ostensible gain to Bank of America on Count 3 ($2,000,000), and the "fraudulently lowered interest rates" on Counts 4 and 5 ($387,610.31). On behalf of counsel for Mr. Heinz, we state that none of those figures is accurate for the reasons stated in Mr. Heinz's opening and reply memoranda. Mr. Heinz agrees with Mr. Ghavami's argument that a gain analysis is inappropriate with respect to the Mass I transaction underlying Count 3 because no loss existed in connection with the award of this perfect cost escrow. Mr. Heinz also asserts that the government has failed to address the inconsistent application of its loss theory and that, with respect to the swaps between UBS and FGIC/GE (Count 4), the government disregards its burden to demonstrate the portion of swap profits, if any, "that results from the offense." Mr. Heinz further asserts that the government disregards that the timing of the swap between UBS and GE/FGIC executed on March 5, 2002, demonstrates that the subsequent MEFA transaction was unrelated.

With respect to the exclusion of broker fees and supposed gain associated with the regression analysis, the government mischaracterizes the holding in *United States* v. *Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). Surreply at 4 n.2. According to the government, *Crosby* holds that "where the sentencing Court has complied with Section 3553(a) and decided to impose a sentence below the higher of two Guidelines ranges regardless of which of the two applies, the Court may dispense with the need to resolve factual issues necessary to make a precise determination of a complicated issue of loss[.]" *Id.* But that is not what *Crosby* holds. In *Crosby*, the Court of Appeals stated that a sentencing court may choose to forego addressing factual issues under certain circumstances if it "makes a decision to impose a *non-Guidelines sentence*, regardless of which of the two ranges applies." 397 F.3d at 112 (emphasis added). Perhaps the government is now silently conceding that a non-Guidelines sentence is appropriate. To the same end, the government cites Fed. R. Crim. P.

POE & BURTON PLLC

The Honorable Kimba M. Wood
May 24, 2013
Page 4


32(i)(3)(B), which states that a sentencing court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]" Surreply at 4 n.2. We agree that the Court does not need to decide disputed issues at sentencing if they are not included in the guideline calculations or otherwise considered against defendants under 18 U.S.C. § 3553(a). In that context, however, Rule 32(i)(3)(B) cuts *against* the government – again reflecting that the government's sentencing effort lacks a foundation.

Although counsel for all three defendants believe that an evidentiary hearing on loss issues is unnecessary because the government has failed to meet the applicable standards, we are prepared to participate in any such hearing if the Court decides to hold one.

Sincerely,

Gregory L. Poe /EHZ

Gregory L. Poe


cc:   Kalina M. Tulley
      John L. Van Lonkhuyzen
      Jennifer M. Dixton
      Charles A. Stillman
      James A. Mitchell
      Marc L. Mukasey
      Jonathan N. Halpern
      Preston Burton