UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                      :
UNITED STATES OF AMERICA                              :
                                                      :
          v.                                          :
                                                      :
PETER GHAVAMI,                                        :          1:10-cr-01217-KMW
GARY HEINZ and                                        :
MICHAEL WELTY,                                        :
                                                      :
               Defendants.                            :
                                                      :
-------------------------------------------------------------x


**GOVERNMENT'S RESPONSE TO THE MOTIONS OF DEFENDANTS HEINZ AND
WELTY FOR RELEASE PENDING APPEAL**

MARC SIEGEL                              KALINA M. TULLEY
Acting Chief, New York Field Office      JOHN W. VAN LONKHUYZEN
Antitrust Division                       JENNIFER M. DIXTON
United States Department of Justice
                                         Trial Attorneys, Antitrust Division
                                         United States Department of Justice
                                         209 South LaSalle Street, Suite 600
                                         Chicago, IL 60604
                                         (312) 353-7530

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

ARGUMENT ................................................................................................................ 2


I.    Standard for Detention after Conviction and Pending Appeal .......................................... 2

II.   Neither Heinz nor Welty have Presented Clear and Convincing Evidence that they are
Unlikely to Flee ........................................................................................................... 3

III.    Neither Heinz nor Welty Have Presented a Substantial Question Permitting Bail .......... 3


    A.    Application of the Ten-Year Statute of Limitations Does Not Raise a Substantial
    Question ............................................................................................................... 4

    B.    Heinz's Rehashed Due Process and Judicial Estoppel Arguments do not Raise a
    Substantial Question for Appeal ............................................................................... 10

    C.    The Jury's Instruction Concerning Intentionally Losing Bids was not Erroneous and
    Does Not Raise a Substantial Question for Appeal ....................................................... 13

    D.    Whether Mark Zaino's Testimony Violated Fed. R. Evid. 701 does not Raise a
    Substantial Question for Appeal ............................................................................... 18


        1.    The Court Did Not Abuse its Discretion in Admitting Zaino's Testimony ........... 18

        2.    Even if Zaino's Testimony was Improperly Admitted, this Error does not Create a
        Substantial Issue for Appeal ............................................................................... 23


CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

Bank of China v. NBM, 359 F.3d 171 (2d Cir. 2004) ................................................................ 22

Bradshaw v. Stumpf, 545 U.S. 175 (2005) ........................................................... 11, 12

Johnson v. United States, 520 U.S. 461 (1997) ........................................................ 13, 15

New Hampshire v. Maine, 532 U.S. 742 (2001)................................................................. 12

Smith v. United States, 133 S. Ct. 714 (2013)................................................................. 11

Stumpf v. Mitchell, 367 F.3d 594 (6th Cir 2004), ........................................................... 11

United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004) ................................................ 2

United States v. Agne, 214 F.3d 47 (1st Cir. 2000)........................................................... 6

United States v. Bahel, 662 F.3d 610 (2d Cir. 2011)......................................................... 13

United States v. Bank of New York Mellon, ---F. Supp. 2d ---, 2013 WL 1749418

(S.D.N.Y. Apr.24, 2013)..................................................................................... 5, 7, 8

United States v. Bouyea, 152 F.3d 192 (2d Cir. 1998)........................................................ 5, 7

United States v. Boyle, 283 Fed. Appx. 825 (2d Cir. 2007).................................................. 11

United States v. Carollo, 2011 WL 3875322 (S.D.N.Y. Aug. 25, 2011) and 2011 WL 5023241

(S.D.N.Y. Oct. 20, 2011)…………………………………………..……………………7, 8

United States v. Coonan, 938 F.2d 1553 (2d Cir. 1991)…………………………………………10

United States v. Countrywide Financial Corp., 2013 WL 4437232  (S.D.N.Y. Aug. 16, 2013).... 5

United States v. Cuti, 720 F.3d 453 (2d Cir. 2013) ........................................................... 20

United States v. Daugerdas, WL 6020113 (S.D.N.Y. Apr. 5, 2011)…………………………..5, 7

United States v. Esterman, 135 F. Supp. 2d 917 (N.D. Ill. 2001)............................................ 7

United States v. Garcia, 413 F.3d 201 (2d Cir. 2005)......................................................... 20

United States v. Grass, 274 F. Supp. 2d 648 (M.D.Pa. 2003)........................................... 7

United States v. Harrison, 204 F.3d 236 (D.C. Cir. 2000)................................................... 9

United States v. Haynes, No. 12-626-CR, -- F.3d --, 2013 WL 4749910

(2d Cir. Sept. 5, 2013)..................................................................................... 21

United States v. Madori, 419 F.3d 159 (2d Cir. 2005) ...................................................... 18

United States v. Mahaffy, 693 F.3d 113 (2d Cir. 2012) .................................................... 13

United States v. Mercado, 573 F.3d 138 (2d Cir. 2009) .................................................... 18

United States v. Miller, 753 F.2d 19 (3d Cir. 1985) .......................................................... 2

United States v. Mullins, 613 F.3d 1273 (10th Cir. 2010)................................................ 6, 8

United States v. Muse, 83 F.3d 672 (4th Cir. 1996) .......................................................... 9

United States v. Ohle, 678 F. Supp. 2d 215 (S.D.N.Y. 2010) ......................................... 5, 7

United States v. Pelullo, 964 F.3d 193 (3d Cir. 1992) ....................................................... 7

United States v. Randell, 761 F.2d 122 (2d Cir. 1985)................................................... 2, 3, 4

United States v. Rigas, 490 F.3d 208 (2d Cir. 2007) ................................................. 18, 21, 23

United States v. Rooney, 37 F.3d 847 (2d Cir. 1994)................................................... 18, 24

United States v. Rubin/Chambers, Dunhill Ins. Servs., 828 F. Supp. 2d 698

(S.D.N.Y. 2011)..................................................................................... 21, 22

United States v. Serpico, 320 F.3d 691 (7th Cir. 2003)................................................... 5, 6, 7

United States v. Ubakanma, 215 F.3d 421 (4th Cir. 2000)........................................................ 6, 7
United States v. Wellington, 417 F.3d 284 (2d Cir. 2005) ........................................................ 10
United States v. Yannotti, 541 F.3d 112 (2d Cir. 2008) ........................................................ 18
Zuchowicz v. United States, 140 F.3d 381 (2d Cir. 1998) ........................................................ 9

Statutes
12 U.S.C. § 1833a ........................................................................................................................ 5
18 U.S.C. § 1344 ........................................................................................................................ 6
18 U.S.C. § 3143(b) ............................................................................................................... 2, 3
18 U.S.C. § 3143(b)(1)(B) ......................................................................................................... 4
18 U.S.C. § 3293……………………………………………………………………...…………3, 4, 7
18 U.S.C. § 3293(2)……………………………………………………………………….......3, 4, 5, 6, 7
18 U.S.C. §1343 ....................................................................................................................... 11

Rules
Fed. R. Evid. 602 ..................................................................................................................... 22
Fed. R. Evid. 701 ....................................................................................................... 4, 18, 21, 22
Fed.R.Evid. 103(a) .................................................................................................................. 23
Federal Rule of Criminal Procedure 11(c)(l)(A) .................................................................... 11
Rule 701(c)............................................................................................................................... 21

# INTRODUCTION

The Government respectfully submits this memorandum in opposition to the motions of Defendants Heinz and Welty for release pending appeal.  Heinz and Welty have failed to carry their burden of proving by clear and convincing evidence that they are not a risk of flight, and they have also failed to establish that there is a substantial question of law or fact for appeal. Therefore, Defendants' arguments for bail pending appeal should be rejected.

# BACKGROUND

Following a five week trial, Heinz and Welty were convicted of conspiracies to defraud municipal bond issuers of money and property and the right to control their assets, as well as to defraud the U.S. Treasury and the IRS.  Tr. 4864-65.  Heinz was also convicted of substantive wire fraud.  *Id*.  Defendants stipulated that their crimes, if proved, affected a financial institution. *See* S-4 *infra* note 2.

On August 8, 2013, the Court entered judgment against Heinz on three counts of conspiracy to commit wire fraud affecting a financial institution, and two counts of substantive wire fraud affecting a financial institution.  Dkt. 385, as amended Dkt. 397.  On July 24, 2013, Heinz was sentenced to 27 months imprisonment, a $400,000 criminal fine, and a three year term of supervised release.  *Id*.  Heinz is to surrender on October 23, 2013.  *Id.*

On August 2, 2013, the Court entered judgment against Welty on three counts of conspiracy to commit wire fraud affecting a financial institution.  Dkt. 384, as amended, Dkt. 386.  On July 24, 2013, Welty was sentenced to 16 months imprisonment, a $300,000 criminal fine, and a three year term of supervised release.  *Id*.  Welty is to surrender on December 3, 2013. *Id.*

1

# ARGUMENT

## I.   Standard for Detention after Conviction and Pending Appeal

After a guilty verdict and sentencing, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).  Thus, each defendant must be detained pending appeal unless a judicial officer finds, first, "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and, second, "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b).  This provision reflects Congress's view that "once a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances."  *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) (quoting H. Rep. No. 907, 91st Cong., 2d Sess. 186-87 (1970)).

A "substantial question" is "'one of more substance than would be necessary to a finding that it was not frivolous.  It is a 'close' question or one that very well could be decided the other way.'" *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citation omitted).  If a defendant fails to establish the existence of a substantial question likely to result in a reversal or new trial on all counts on which he is incarcerated, bail cannot be granted.  *See id.*  On all these issues, "the burden of persuasion rests on the defendant."  *Id.*

## II.     Neither Heinz nor Welty have Presented Clear and Convincing Evidence that they are Unlikely to Flee

It is the defendant's burden to prove by "clear and convincing evidence" that he is unlikely to flee or pose a danger to the community.  18 U.S.C. § 3143(b); *Randell*, 761 F.2d at 125.

Heinz argues that he has "fully cooperated with the judicial process," appeared for all court appearances, surrendered his passport, and is deeply committed to his family and fiancée. Heinz Mem. 5.  Welty makes similar arguments adding that he has paid the Court-imposed fine and Welty's wife recently has given birth to a daughter.  Welty Mem. 3.  The Government does not contend that either Defendant is a danger to his community.  And while the Government acknowledges that both Defendants have strong family ties, neither Defendant has presented clear and convincing evidence that they will not flee in light of the prison sentences imposed by the Court.  Defendants' incentives to flee are far greater now than they were prior to trial and sentencing.  Heinz has been sentenced to serve over two years in prison and Welty has been sentenced to serve 16 months.  Because neither Defendant has satisfied the first statutory requirement to show that he will not flee by clear and convincing evidence, Defendants' motions should be denied for this reason alone.

## III.     Neither Heinz nor Welty Have Presented a Substantial Question Permitting Bail

Defendants claim that several legal issues present a substantial question for appeal.  Both Defendants claim that whether the ten-year statute of limitations of 18 U.S.C. § 3293 applies is a substantial question.  Welty Mem. 5-10; Heinz Mem. 5-6.  Heinz further argues the Government should be judicially stopped from relying on 18 U.S.C. § 3293(2) in this litigated case when it did not so in connection with any of the plea agreements related to the municipal bonds

investigation.  Heinz Mem. 9-15.  Both arguments previously were rejected by this Court when it

ruled on Defendants' pre-trial motions and, as explained below, neither argument is sufficient to

entitle Heinz or Welty to bail pending appeal.  Op., Dkt. 211, 8-19 & n.10 (July 13, 2012).

Likewise, the additional arguments that Welty raises—whether the intentionally losing bids

instruction was erroneous and whether Mark Zaino's testimony violated Fed. R. Evid. 701—do

not rise to the level of a substantial question likely to result in a reversal or new trial on all counts

on which Welty is incarcerated, and therefore Welty is not entitled to bail pending appeal.[1]

### A.  Application of the Ten-Year Statute of Limitations Does Not Raise a Substantial Question

Having argued unsuccessfully at the pre-trial phase that 18 U.S.C. § 3293(2) cannot apply

in this case, Defendants made a tactical decision to stipulate to the jury that the offenses in

question affected a financial institution, such that a ten-year statute of limitations applies.[2]

Defendants now attempt to argue that the offenses of conviction could not have affected a

financial institution.  But they have failed to establish that their rehashing of old arguments raises

"a substantial question of law."  18 U.S.C. § 3143(b)(1)(B); *United States* v. *Randell,* 761 F.2d

122, 125 (2d Cir. 1985).  Nor have they established that the application of § 3293 is "a 'close'

question or one that very well could be decided the other way."  *Id.*

First, Welty's primary argument is that the district court erred in holding that for

purposes of 18 U.S.C. § 3293(2), a wire fraud offense may be deemed to "affect[] a financial

---

[1]  Heinz joins in Welty's additional arguments to the extent they apply to him.  Heinz Mem. 1 n.2.  Heinz similarly is not entitled to bail pending appeal based on these additional arguments for the same reasons the arguments fail for Welty, *see* discussion *infra* pp. 13-25.

[2]  Stipulation S-4 provides as follows: "IT IS HEREBY STIPULATED by the parties that each offense charged in the above-captioned matter, if proven beyond a reasonable doubt to have occurred, affected a financial institution for purposes of 18 U.S.C. §3293(2) and 18 U.S.C. §1343."

institution" where it exposes such institution to a new or increased risk of loss.  Welty Mem. 5-9.

Rather, Welty argues that "actual loss" must be shown.  *Id.* at 7.  But Welty ignores the fact that

the Government was prepared to present evidence at trial of actual loss suffered by the financial

institutions who participated in the offenses of conviction.  *See* Dkt. 110, Gov't Br. at 10-14.

Moreover, this Court correctly ruled, based on Second Circuit precedent, persuasive out-of-

circuit law, and recent decisions within this district, that no actual loss is required under Section

3293(2).  Indeed, as Welty acknowledges, the Court's sound reasoning subsequently has been

followed in this district.  Welty Mem. 9 n.4; *see United States v. Bank of New York Mellon*, ---F.

Supp. 2d ---, 2013 WL 1749418 at *12-13 (S.D.N.Y. Apr. 24, 2013) (construing 12 U.S.C.

§ 1833a, which sets forth civil penalties for fraud "affecting a federally insured financial

institution"); *United States v. Countrywide Financial Corp.*, 2013 WL 4437232 at *5 (S.D.N.Y.

Aug. 16, 2013) (same).  As Judge Kaplan recently observed in *Mellon*, "[c]ourts regularly have

concluded that a fraud affects an institution by embroiling it in costly litigation, whether because

the fraud causes actual losses to the institution through settlements and attorney's fees or because

it exposes the institution to realistic potential legal liability."  *Mellon*, 2013 WL 1749418 at *12

(footnotes omitted).

In its decision, this Court recognized that "the Second Circuit has broadly interpreted

[§ 3293(2)'s] requirement that an offense 'affect' a financial institution."  Op., Dkt. 211, 9 (citing

*United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998)).  And consistent with other recent

persuasive authority, that "[t]he statute's applicability is not limited to circumstances in which a

financial institution is the object or victim of a scheme to defraud."  *Id.* (citing *United States v.*

*Ohle*, 678 F. Supp. 2d 215, 228-29 (S.D.N.Y. 2010); *United States v. Daugerdas*, No. S3 09 Cr.

581, 2011 WL 6020113, at *1 (S.D.N.Y. Apr. 5, 2011); *United States v. Serpico*, 320 F.3d 691,

695 (7th Cir. 2003)).  The Court further recognized that "[a]lthough the Second Circuit has not

addressed the issue, several courts, including the Seventh and Tenth Circuits, have concluded

that a financial institution is also "affected" for purposes of § 3293(2) where it is exposed to the

risk of loss, but does not experience any actual loss."  *Id.* at 10 (citing *Serpico*, 320 F.3d at 694-

95; *United States v. Mullins*, 613 F.3d 1273, 1278 (10th Cir. 2010); *United States v. Agne*, 214

F.3d 47, 52 (1st Cir. 2000)).  The Court found further support for its ruling in the treatment

courts have given to 18 U.S.C. § 1344, which criminalizes schemes to defraud financial

institutions.  This Court observed that "[i]n this Circuit and others, exposing a financial

institution to a risk of loss alone is enough to prove a scheme to defraud under that statute."  *Id.*

at 10 n.6.  Finally, the Court opined that interpreting § 3293(2) to cover conduct that exposes a

financial institution to a new or increased risk of loss is consistent with the plain meaning and

purpose of the statute and the statute's legislative purpose, "which is 'to protect financial

institutions, a goal it tries to accomplish in large part by deterring would-be criminals from

including financial institutions in their schemes.'"  *Id.* at 11 (citing *Serpico*, 320 F.3d at 694).

Thus, based on Second Circuit precedent, persuasive authority from other circuits, other

decisions from this district, and principles of statutory construction, the Court ruled that "for

purposes of 18 U.S.C. § 3293(2), a wire fraud offense may be deemed to 'affect[] a financial

institution' where it exposes such institution to a new or increased risk of loss, even if there is no

actual or net loss."  *See* Op., Dkt. 211, 13.

    The out-of-circuit cases Welty cites at pp. 7-9 of his brief do not support a conclusion

that the Court's ruling on the statute of limitations is a "close question" or that it could be

decided the other way.  *Ubakanma* did not hold, as Welty suggests, that a financial institution is

affected only if it "suffer[ed]" an actual loss."  Welty Mem. at 7 (citing *United States v.*

6

*Ubakanma*, 215 F.3d 421, 426 (4th Cir. 2000)).  Rather, the Fourth Circuit held that a financial

institution was not affected based on a "scheme's mere utilization of the financial institution in

the transfer of funds."  *Id.; see also United States v. Grass*, 274 F. Supp. 2d 648, 654-56 (M.D.

Pa. 2003) (financial institutions that "were merely used as a conduit to transfer funds procured

through a wire fraud" were not affected by those transactions); *United States v. Esterman*, 135 F.

Supp. 2d 917, 919-20 (N.D. Ill. 2001) (same).  But here, the financial institutions were not a

mere instrumentality of the crime; they were participants in the fraud.  And, as this court

correctly held, the financial institutions could be affected by that participation, through exposure

to a new or increased risk of loss.  *See* Op., Dkt. 211, 13.

Moreover, a number of courts, including this Court, have expressly held that Section

3293's applicability is not limited to situations where the financial institution is the "object or

victim" of the fraud.  Op., Dkt. 211, 9 (citing *Ohle*, *Daugerdas*, and *Serpico*); *see also Mellon*,

2013 WL 1749418 at *7-11 (financial institution may be affected by a fraud even though the

fraud was not "directed at" that institution").  And contrary to Welty's assertions, the Second

Circuit's opinion in *Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998), which counseled that Section

3293(2) "broadly applies to any act of wire fraud 'that affects a financial institution'" supports

the Court's construction of §3293(2).  *See Bouyea*, 152 F.3d at 195 (quoting *United States v.

Pelullo*, 964 F.3d 193, 215-16 (3d Cir. 1992)).

Similarly, Judge Baer's rulings in *United States v. Carollo*, No. 10 CR 654, 2011 WL

3875322, at *2 (S.D.N.Y. Aug. 25, 2011), and 2011 WL 5023241 at *4 (S.D.N.Y. Oct. 20,

2011), even if correct, are not inconsistent with the Court's ruling and do not suggest there is a

close question on appeal.  *Cf.* Heinz Mem. 8.  In *Carollo*, Judge Baer declined to apply the ten-

year statute of limitations finding that "the government has not alleged that the financial

institutions suffered any actual loss or at most the risk of loss is *de minimis*."  *Carollo*, 2011 WL 3875322, at *2; 2011 WL 5023241 at *4.  To the contrary, here, the Government specifically alleged in the Superseding Indictment that Defendants' schemes to defraud affected a financial institution.  Ind. ¶¶ 24, 34, 42, 51, 59.  And the Government was prepared to prove, through settlement documents and testimony, and indeed, the Defendants *stipulated*, that financial institutions were affected by the charged conduct, as discussed further below.[3]

Both Heinz and Welty further argue that there was not a sufficiently "direct nexus" between the offenses of conviction and the Government's proffered evidence of potential and actual loss to three financial institutions.  Heinz Mem. 6-8; Welty Mem. 10-11.  Whether evidence establishes that an offense affects a financial institution "is a question of fact for a jury to decide."  Op., Dkt. 211, 13.  This Court already correctly ruled that the evidence proffered by the Government—including documentary and testimonial evidence regarding government settlements—was sufficient to permit a reasonable jury to find that alleged conduct affected a financial institution.[4]  Op., Dkt. 211, 13-19.  Indeed, "[t]he Second Circuit takes a liberal view of the harms that are sufficiently direct to find an intent to defraud.  The effects here [the bank's litigation costs, legal exposure, damage to business prospects and reputational harm] easily pass muster."  *Mellon*, 2013 WL 1749418, at *13; *see also Mullins*, 613 F.3d at 1278.[5]

---

[3]  *See* S-4 *supra* note 2.

[4]  Neither Defendant argues that this evidence was inadmissible, rather they argue it was insufficient.  Heinz Mem. 6-8; Welty Mem. 10-11.

[5]  Welty complains that the Government and the financial institutions did not settle until after the original Indictment was returned, and if these institutions had not settled before trial, or if the Government focused on individuals, there would be no basis for relying on Section 3293(2).  Welty Mem. 11.  Welty cites no case law in support of this proposition.  Welty is essentially arguing that the evidence to support the Government's allegations that his offenses affected a financial institution was insufficient; however, Welty stipulated otherwise.  *See* S-4 *supra* note 2.

Furthermore, Defendants could have presented to the fact-finding jury their argument that the settlements were "driven by economic or public relations considerations" and thus "collateral to the conduct charged." Heinz Mem. at 7.  Instead, Defendants made a tactical decision to stipulate that the offenses affected a financial institution.  "Because a stipulation induces the government not to offer evidence to prove the facts involved in the stipulation, a defendant may not argue at trial or on appeal that the stipulation is insufficient to prove beyond a reasonable doubt the facts or elements to which he has stipulated."  *United States v. Muse*, 83 F.3d 672, 679 (4th Cir. 1996); *see also United States v. Harrison*, 204 F.3d 236, 240-41 (D.C. Cir. 2000) ("It is well settled that a defendant, by entering into a stipulation, waives his right to assert the government's duty to present evidence to the jury on the stipulated element.") (citing *inter alia Zuchowicz v. United States*, 140 F.3d 381, 392 (2d Cir. 1998)).

Moreover, Defendants agreed that they would not argue on appeal that the proof at trial on statute of limitations was insufficient. Tr. 2598.  However, Welty now argues that "[t]he record does not show that the [settlement and non-prosecution agreements] are anything more than the end product of a business judgment that was driven by various considerations independent of Michael Welty's conduct."  Welty Mem. 10.  Indeed, the trial record does not

---

Moreover, the settlement agreements and non-prosecution agreements merely "illustrate[d] that the alleged conduct created an increased risk of loss" for the financial institutions that was "ultimately realized—in the form of restitution payments and civil penalties—when those entities entered into [the agreements]."  Op., Dkt. 211, 18.  The settlements were not the *only* evidence of risk of loss or actual loss that the Government could have presented at trial, which also included attorneys' fees and private litigation costs.  In addition, even if there was no settlement evidence or evidence of other costs, the argument that the *prospect* of legal liability is not sufficiently direct to show a financial institution was "affected" has been rejected.  *See Mellon*, 2013 WL 1749418, at *12-13 ("That liability exposure is sufficient finds support in persuasive holdings that a bank can be 'affected' when a scheme exposes the bank to 'a new or increased risk of loss' even without a showing of actual loss.") (citing *Mullins*, 613 F.3d at 1278 and this Court's opinion in *Ghavami*).

contain *anything* about the settlement agreements or other evidence of loss for the very reason that Defendants chose to stipulate rather than allow the jury to weigh the evidence.  And with the only evidence they could consider, the stipulations, the jury correctly found that the offenses affected a financial institution.  With no trial record beyond these stipulations, the Court of Appeals will not disturb that jury finding.  In other words, Defendants cannot "evade the consequences of [their] unsuccessful tactical decision."  *United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991); *United States v. Wellington*, 417 F.3d 284, 289-90 (2d Cir. 2005) (where defendant proceeded to trial on stipulated facts and declined to present evidence or put on a defense for tactical reasons, his "deliberate choice to forego each of these rights" constituted waiver of the issues).

### B.  Heinz's Rehashed Due Process and Judicial Estoppel Arguments do not Raise a Substantial Question for Appeal

Heinz has raised arguments concerning due process and judicial estoppel that were squarely rejected by this Court pre-trial and that do not raise substantial questions for appeal.[6] *See* Op., Dkt. 211, 19 n.10.  Heinz argues that his due process rights were violated when the Government alleged that his conduct affected a financial institution but it did not do so in other cases where the defendant pleaded guilty.  The Court rejected this argument pre-trial.  *Id.* Moreover, Heinz argues that the Government's Superseding Indictment raised a new and inconsistent theory—that Heinz's fraud affected a financial institution—and the Government should be stopped from relying on this theory to extend the statute of limitations in order to salvage Heinz's prosecution.  This argument similarly does not have merit.

---

[6]  Welty requests that if the Court grants Heinz's bail motion on the estoppels basis, Welty be released on the same basis.  Welty Mem. 2 n.1.

First, there is no inconsistency between the allegations in the original and Superseding Indictments.  Both Indictments alleged that Heinz committed fraud or engaged in fraud conspiracies while employed at UBS with numerous financial institutions and financial services executives who participated in the fraud.  The Superseding Indictment added that these frauds affected a financial institution.  While "[t]he Government need not allege the time of the offense in the Indictment," *Smith v. United States*, 133 S. Ct. 714, 720 (2013), the Superseding Indictment clarified the breadth of Heinz's fraud and allowed the Government to seek enhanced penalties at sentencing.  *See* 18 U.S.C. §1343 ("If the violation . . . affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.").  It is within the Government's prosecutorial discretion to seek such enhanced penalties in cases where a defendant does not admit guilt and goes to trial.  *See* Op., Dkt. 211, 19 n.10 ("Federal Rule of Criminal Procedure 11(c)(l)(A) specifically contemplates plea agreements in which defendants plead guilty to lesser or fewer charges than they might have faced had they proceeded to trial.").

Second, even if inconsistent prosecutorial theories could create a due process violation, *see Bradshaw v. Stumpf*, 545 U.S. 175, 187-88 (2005) (reversing Court of Appeals finding that prosecutorial inconsistencies voided defendant's guilty plea and expressing "no opinion on whether the prosecutor's actions amounted to a due process violation"), the cases that Heinz cites, Heinz Mem. 10-11, would not apply here.  This is not a case where the Government has argued, in two different proceedings, two inconsistent and irreconcilable versions of the same events, such as identifying two different defendants as "the one to pull the trigger, resulting in the fatal shots" to the same murder victim.  *Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir. 2004), *rev'd by Bradshaw v. Stumpf*, 545 U.S. 175 (2005); *cf. United States v. Boyle*, 283 Fed. Appx.

11

825, 826 (2d. Cir. 2007).[7]  Contrary to Heinz's arguments, the Government in this case has not relied on factually inconsistent theories in prosecuting this or any other related case.  To be sure, the Government took no position on whether the conduct in the pleaded cases affected a financial institution.  The only difference between the pleaded cases and this one is that the Government alleged that Heinz's fraud affected a financial institution, which was within the Government's discretion to do.  Op., Dkt. 211, 19 n.10.

Furthermore, Heinz has not, and cannot, explain how the guilty pleas in the related cases affected his substantial rights or imposed an unfair detriment on him.  *See, e.g.*, *Bradshaw v. Stumpf*, 545 U.S. at 187 (no due process violation where defendant "never provided an explanation of how the prosecution's post-plea use of inconsistent arguments could have affected the knowing, voluntary, and intelligent nature of his plea"); *New Hampshire v, Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel requires a showing that the "party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriments on the opposing party").  The Superseding Indictment fairly informed Heinz that the Government would seek to prove that his offenses affected a financial institution.  Heinz also had the opportunity to defend against the allegations.  He unsuccessfully argued pre-trial that the indictment should be dismissed as untimely.  In addition, Heinz had the opportunity to argue to the jury that the offenses did not affect a financial institution, but he chose instead to stipulate.  Thus, Heinz suffered no harm.

---

[7]  In *Boyle*, the defendant argued that his due process rights were violated when the government argued in defendant's case that the robbery of a specific bank was a predicate act in furtherance of one criminal enterprise and the same robbery was a predicate act in furtherance of a different criminal enterprise in another case; the Second Circuit held that the two theories were not factually inconsistent.  *Id.* at 826.

In sum, Heinz's arguments concerning due process and judicial estoppel do not present close questions for the Second Circuit and do not support bail pending appeal.

### C. The Jury's Instruction Concerning Intentionally Losing Bids was not Erroneous and Does Not Raise a Substantial Question for Appeal

Welty claims that release pending appeal is appropriate because the "intentionally losing bids" language in the Safe Harbor jury instruction was incorrect and tainted the jury's deliberations as to Welty. Welty Mem. 12-22.

A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law. *United States v. Bahel*, 662 F.3d 610, 634 (2d Cir. 2011). If a defendant objected to an erroneous jury instruction at trial, a conviction will be affirmed if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *United States v. Mahaffy*, 693 F.3d 113, 136 (2d Cir. 2012). But if the defendant failed to object at trial, the Court of Appeals has discretion to reverse only if the instruction contains plain error that "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 465-66 (1997).

Here, Welty has failed to establish that he objected to the "intentionally losing bids" language in the Safe Harbor instruction charged to the jury, that it misled the jury as to the correct legal standard, and that the instruction seriously affected the fairness of the trial. Even if Welty objected and the intentionally losing bids language was incorrect, a reasonable jury would have convicted Welty even absent the allegedly incorrect instruction.

First, Welty did not object to this jury instruction at trial. The Court originally added the intentionally losing bids language to the Safe Harbor jury instruction. *See* Ghavami Jury Charge v. 9 (August 23, 2013) (with agreed changes by counsel for the parties) (attached as Ex A). The Government offered a suggested change to the language, *see* Government's Proposed Changes

13

(August 24, 2013) (attached as Ex B), to which Defendants objected, Tr. 4092-4107.  After considerable discussion during the charge conference, counsel for Ghavami and Welty provided the language that was ultimately charged to the jury.[8]  Tr. 4103-04, 4106-07.  The paragraph was slightly modified before it was read to the jury by adding the word "only" to the last sentence. Tr. 4470-76, 4769. [9]  But Welty did not object to the language that was given, rather he suggested a way to modify it.  Tr. 4103-04, 4106-07, 4769.  Indeed, the instruction is not inconsistent with Welty's position that "an intentionally losing bid doesn't have any meaning within the treasury regulations unless it is submitted as a courtesy for purposes of satisfying the three-bid requirement."  Tr. 4106-07, 4113-14.

Moreover, the Safe Harbor instruction neither misled the jury as to the correct legal standard nor failed to adequately inform the jury on the law.  The majority of the instruction merely tracked the language of the governing Treasury regulations.  Tr. 4094.  The statement that "[t]he government contends that many certifications were false because the bids included intentionally losing bids," was no instruction at all; the Court did not endorse the Government's theory, but merely restated what the Government contended throughout the trial.  Tr. 4097.  And the instruction that "[y]ou may not consider a certification to be false if you find that an intentionally losing bid was submitted only for a legitimate business purpose (for example, to keep the potential provider's name visible)," which was requested by Ghavami's counsel, Tr. 4103, endorsed Defendants' view of intentionally losing bids, that is, there were legitimate

---

[8] MR. POE: "Your Honor had suggested that many certifications were false because the bids included intentionally losing bids . . . I would propose that that be done, and then the Court would state the regulations require a bidder to certify that: One, it did not consult with any other potential provider about its bid much, two, and so forth.  *And we believe that would be a correct statement.*"  Tr. 4106-07 (emphasis added).

[9] Counsel for Heinz objected to the insertion of the word "only" in this instruction.  Tr. 4470-76. Counsel for Welty, however, did not join that objection, nor does Welty argue now that it is the insertion of the word "only" that renders the instruction incorrect.

reasons to submit a losing bid, which they argued repeatedly. *See, e.g.*, Tr. 406-07 (Heinz opening), Tr. 4496-97, 4509 (Heinz closing); 4612-15, 4627-28 (Welty closing). Thus, the instruction given was not inconsistent with Defendants' theory but rather helped Welty argue his case. *See*, *e.g.*, Tr. 4613-14 (Welty closing) ("[Grimm] wanted information and he wanted marketplace visibility. He wanted -- he wanted -- those are completely legitimate business reasons, I should add, even under the government's approach to this case, for a provider to put in a number that he doesn't actually want to win at.").

    For these reasons, the intentionally losing bids language of the Safe Harbor instruction—that Welty only now objects to—did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 465-66. Under the plain error standard, Welty's argument fails, as any rational jury would have found Welty guilty had the allegedly offending instruction been omitted. As the Court properly instructed, the question for the jury to answer was whether Welty and his co-conspirators agreed to defraud municipalities, the U.S. Treasury, and the IRS by making material false statements in order to obtain money or property. *See* Tr. 4736-65. Ample evidence linked Welty to numerous misrepresentations in each of the counts of conviction. The Government introduced over 60 false certifications signed by Welty and his co-conspirators relevant to Counts One, Two, and Four. *See* Ex. C (false certifications). Seventeen of these false statements were signed or submitted by Welty. *Id.* The jury could consider the false bid forms and other false certifications introduced by the Government and compare them to the conduct of Welty and his co-conspirators. For example, in the Rhode Island Tobacco transaction, Welty signed the bid form, which stated that: "The potential provider agrees that it did not consult with any other potential provider about its bid, that the bid was determined without regard to any other formal or informal agreement that the

potential provider has with the Issuer or any other person (whether or not in connection with the bond issue) . . . ."  GX-24-9.  However, the jury heard Welty ask Campbell to back off the Rhode Island Tobacco deal[10] and learned from Campbell that Welty and his co-conspirators agreed that Bank of America (BOA) would not compete with UBS on the deal and instead would sell securities to UBS.  Tr. Tr. 2439-40, 2450-2470, GX-204408B.  Moreover, several of Welty's co-conspirators explicitly testified that they made false representations during the course of the fraud conspiracies on other deals that involved Welty.  *See, e.g.,* Tr. 2429-30 (Campbell), GX-22-13, GX-22-17 (Campbell bid forms) (Anchorage) (Count One); Tr. 3482-84, 3493-94 (Rothman), 37-62, 37-63, 37-65, 38-16 (San Jose and Cabrillo false broker certifications) (Count Two).

To be sure, contrary to Welty's arguments, much of the evidence that the Government introduced against Welty had nothing to do with Welty or his co-conspirators submitting intentionally losing bids; rather it concerned Welty rigging deals as a provider so that UBS

---

[10]   The Government played the following for the jury (in relevant part):

MIKE WELTY: So the only thing is I'm working on the escrow for the tobacco tomorrow.
DOUG CAMPBELL: Okay.
MIKE WELTY: It's basically, you know, we have a huge axe to do it, we're stocked up.
DOUG CAMPBELL: Yeah, yeah.
MIKE WELTY: You know, but we may be in the market to buy some paper from people.
DOUG CAMPBELL: Yep, okay, okay. That sounds real good.
MIKE WELTY: Alright?
DOUG CAMPBELL: Yeah. Let's talk about that, too, later today.
MIKE WELTY: Okay.

GX-204408(B); Tr. 2441-45.  The evidence showed that Welty and Campbell later met to discuss a deal where Bank of America would not compete on the transaction.  Tr. 2450.

would win the transactions (*i.e.*, Rhode Island Tobacco (Count One) (agreeing with co-conspirator Campbell that Bank of America would not compete with UBS on the deal); San Jose Evergreen and Cabrillo (Count Two), Tr. 3453, 3481-84, 3489-90 (Rothman) (describing how Welty received last looks on the deals that allowed him to win the transactions); Tr. 2932 (Goldberg) (stating that he set up deals once or twice for Welty to win); Tr. 1251-53 (Zaino) (describing a call he received from Welty complaining that CDR was not adequately setting up a deal for Welty to win).  And in Count Four, the evidence involved Welty rigging deals as a broker so that co-conspirator Grimm of GE-FGIC would win deals.  *See* GX-11906 (Rhode Island Housing), GX-605507 (Catholic Health Initiative).  The evidence demonstrated that Welty lowered Grimm's bid rate to the detriment of the municipal issuer, *see, e.g.*, GX-11968 & GX-11969 (Rhode Island Housing), GX-605603 & GX-605604 (Catholic Health Initiative), GX-411634, GX-411635 & GX-411636 (New Mexico Assistance Foundation), and Welty signed false broker forms.  *See, e.g.*, GX-16-8 (Rhode Island Housing Welty broker certificate); *see also* Ex. C.  In exchange for Welty's and Heinz's assistance on the deals, Grimm provided UBS with kickbacks in the form of revenue from interest rate swaps that GE-FGIC entered into with UBS. *E.g.*, Tr. 1061-66, 1083-84, 1156-57, 1177-78, 1201-02, 1222-23 (Zaino); *see, e.g.*, GX-11944 & GX-11954 (MEFA & Rhode Island Housing).  Welty helped structure deals with Grimm, so money could be taken from the issuer and Grimm's excess profits shared with UBS.  *See, e.g.*, GX-11906(B); GX-11944; GX-11954; Tr. 1134, 1156-57 (Zaino).  In short, the evidence the Government presented against Welty was overwhelming and had little to do with intentionally losing bids.  Therefore, this instruction, if erroneous, would be unlikely to affect the jury's verdict.

For these reasons, Welty's arguments with respect to the intentionally losing bids language in the Safe Harbor instruction do not raise a substantial question or support bail pending appeal.

### D.  Whether Mark Zaino's Testimony Violated Fed. R. Evid. 701 does not Raise a Substantial Question for Appeal

Welty contends that the Court erroneously admitted, under Fed. R. Evid. 701, Mark Zaino's testimony decoding language used in recorded conversations that were in furtherance of the conspiracy charged in Count Four and this error would likely result in reversal on all counts of conviction. Welty Mem. 24-38.  But a court of appeals reviews a district court's evidentiary rulings only for abuse of discretion, *see United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009), and will reverse only if an evidentiary error affected a defendant's substantial rights in influencing the jury verdict, *see United States v. Madori*, 419 F.3d 159, 168 (2d Cir. 2005).  And evidence admitted erroneously on one count will result in the reversal of a conviction on another count only where the erroneously admitted evidence has a "decidedly pejorative connotation" likely to "arouse the jury" and that it will overwhelm the remaining evidence.  *United States v. Rooney*, 37 F.3d 847, 855-57 (2d Cir. 1994).  Welty cannot meet these heavy burdens, and has not established that there is a substantial question for appeal.

#### 1.  The Court Did Not Abuse its Discretion in Admitting Zaino's Testimony

As the Second Circuit has explained, "where a witness derives his opinion solely from insider perceptions of a conspiracy of which he was a member, he may share his perspective as to aspects of the scheme about which he has gained knowledge as a lay witness subject to Rule 701, not as an expert subject to Rule 702."  *United States v. Yannotti*, 541 F.3d 112, 126 & n.8 (2d Cir. 2008) (citing *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007)).  Consistent with

18

*Yannoti* and this Court's ruling, Order, Dkt. 218, Zaino provided testimony derived from his insider perceptions of the conspiracy in which he participated.  That testimony provided background and context for ambiguous conversations, identified speakers on the tapes, and interpreted coded language used by Welty and Grimm on several Count Four transactions.  *Cf.* Order, Dkt. 218, 1.  And contrary to Welty's arguments, the Government laid the proper foundation for Zaino's testimony.

To be sure, the evidence showed that Zaino was an active participant in the Count Four conspiracy.  Zaino testified that he spoke with co-coconspirator Grimm "somewhat frequently" to communicate about deals, Tr. 1037; that he bid out the Massachusetts Educational Finance Authority (MEFA) transaction that was rigged for Grimm to win, Tr. 1034, 1079, 1083, 1121-23; that he was involved in sharing profits on the Rhode Island Housing swap with FGIC, Tr. 1079, 1082 -83, 1088; and that he discussed the rigged Commonwealth of Puerto Rico transactions with Welty and Heinz, Tr. 1039-40, 1045-49.

Welty's primary argument is that Zaino testified improperly when he explained the Rhode Island Housing transaction—in which Zaino took part—when he decoded recorded conversation between Welty and Grimm on that transaction.  Welty Mem. 25-29.  A close examination of Zaino's testimony establishes that it was proper and appropriate, and based on his own personal knowledge and participation in the Count Four conspiracy.

First, Welty complains that there was no foundation for Zaino's testimony decoding the phrase "give me your best indication" in a conversation between Welty and Grimm regarding Rhode Island Housing.  In particular, Welty argues that Zaino testified in another case that indications are not bids.  Welty Mem. 26, 28, 33-35.  But Zaino had reason to be able to decode the conversation.  Zaino spoke with Grimm "somewhat frequently," Tr. 1037 (Zaino); he worked

19

with Welty and interacted with Welty on deals, including corrupt transactions, *see. e.g.,* Tr. 506-07, 533, 1039, 1047-49, 1070.  Zaino participated in the fraud concerning this very deal.  Tr. 1079, 1082 -83, 1088.  Furthermore, based on Zaino's personal knowledge, Zaino testified earlier at trial, the word "indication" had a special meaning to the co-conspirators, which changed as it got closer to bid time.  Tr. 697-99.  According to Zaino, early on, it signified "a price that would transact given the then current market."  Tr. 698.  But during the bidding time, Zaino explained that "[a]s broker I would use it to signal the bidder as to a bid to submit.  And as a bidder I would use it to signal to the broker as a bid that I wanted to submit."  Tr. 699.  Contrary to Welty's arguments, Welty Mem. 28, Zaino's testimony was helpful to the jury, enabling the jury to understand that during this call, at this time in the bidding, the term "indication" referred to the bid a provider wanted to submit.  That is, Zaino decoded the language of the call and put it in context, nothing more.

Welty also complains that Zaino, who participated in the Rhode Island Housing transaction, improperly compared price levels mentioned on two different recorded calls, made a simple observation that the second price was lower, and acknowledged, based on this information, that a representation in his co-conspirator's broker certificate was false.  Welty Mem. 26, 27-29.  Welty's complaints have no basis for several reasons.  First, Zaino testified based on his participation in the conspiracy and in this transaction in particular.  Tr. 1079, 1082-83, 1088.  Second, Zaino's "reasoning process" which compared numbers and made simple observations was "familiar to the average person in everyday life."  *See United States* v. *Garcia*, 413 F.3d 201, 216 (2d Cir. 2005).  Third, Zaino's observation—that the municipality was earning a lower interest rate—was merely was offered to show the difference in the rate absent the fraud, which is still permissible lay opinion testimony.  *See United States v. Cuti*, 720 F.3d

453, 457, 460 (2d Cir. 2013) (quoting *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007)

(testimony by accountant permissible when it was "simply offered to show what the amount of

the debt would have been" if the fraud had not occurred)).  Finally, while Zaino acknowledged

that Welty's broker certificate was false, the jury could have early come to this same conclusion

based on the other testimony and evidence presented on the deal.  *See* Tr. 1078-79, 1080-81,

1084 (Zaino); GX-8441, GX-11906, GX-11968, GX-11969.

    Welty further contends that Zaino's testimony violated Rule 701(c) because it was based

on specialized knowledge.  But Zaino did not testify as an expert, as Welty argues, Welty Mem.

29-31, as his knowledge came from his own participation in the conspiracy.  The fact that

Zaino's testimony was in part informed by his experience working in the municipal reinvestment

business does not mean that Zaino was testifying as an expert.  As this Court recognized pre-

trial, "a witness's testimony relating to a limited amount of industry-specific background

knowledge, in the course of testifying about the conspiracy, does not make his testimony that of

an expert."  Order, Dkt 218, 3 (citing *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828

F. Supp. 2d 698 (S.D.N.Y. 2011)).  *Haynes* is not to the contrary, s*ee* Welty Mem. 29.  In

*Haynes*, an officer's testimony was not admissible under Rule 701 because his testimony

regarding how the fuel tank in a rental car functions was based on knowledge outside of the

investigation at issue "that [the officer] acquired inspecting other cars at the border."  *United*

*States v. Haynes*, No. 12-626-CR, -- F.3d --, 2013 WL 4749910 *13 (2d Cir. Sept. 5, 2013).

Unlike *Haynes*, Zaino's testimony was based on his participation in the Count Four conspiracy

and his review of transactions that were similar to transactions that he rigged himself (*e.g.*,

MEFA, Tr. 1034, 1079, 1083, 1121-23 (Zaino)).  Where, as here, the Government presented

Zaino's testimony "as the product of the witne[ss's] participation in the conspiracy" rather than

21

his "experience in the financial industry more broadly, there is little danger that the jury would mistake the cooperating witne[ss] for [an] exper[t]." *Id.* at 705.[11]  *See also Bank of China v. NBM,* 359 F.3d 171, 181 (2d Cir. 2004) ("The fact that [the witness] has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . .").

Welty also argues that Zaino testified improperly as to Welty's state of mind on the Rhode Island Housing and Catholic Health Initiatives transactions.  "Concerning a discussion of the bid list on the RIH deal," Welty complains that, "Mr. Zaino testified that Mr. Grimm was 'stating that he does not want to see FSA and AIG on the bid list,' 'wants to eliminate the more aggressive,' and 'is wanting to talk about who to eliminate from the bid list.'"  Welty Mem. at 27.  But the court sustained objections to the first two statements, and Welty did not object to the third.  Tr. 1103-04.

In addition, Welty takes issue with Zaino's testimony that "Grimm's statement on GX 11906 [a call] to Mr. Welty that 'the list that you did last time was pretty good,' meant the list of bidders for the Catholic Health Initiatives (CHI) transaction."  Tr. 1108.  This is not testimony about Grimm's state of mind, as Welty contends, but rather it simply explained what "the list" referred to.  And the Court was careful to make sure that Zaino's testimony that "the list that you did the last time" was the CHI bid list was based upon his knowledge of the conspiracy's

---

[11]  Welty suggests that Zaino's testimony was also inconsistent with Rule 602.  Welty Mem. 25. However, Zaino was a participant in and has personal knowledge concerning the Count Four conspiracy in accord with Fed. R. Evid. 602, which provides a witness may testify "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Cf.* Tr. 1098-99 (summarizing Zaino's participation in and knowledge of the Count Four conspiracy).

workings.  Tr. 1109.  Zaino made clear that he knew that it was CHI because of the timing of the two deals.  Tr. 1101-1111.

Indeed, any time that Defendants objected to testimony as characterizing an individual's state of mind, the court carefully considered their arguments and sustained their objections when appropriate.  *See generally* Tr. 1033-1248.

In sum, the Court did not abuse its discretion in admitting any of the testimony in accord with *Yannotti* about which Welty complains.  Zaino's testimony was firmly grounded in his participation in the Court Four conspiracy and included simply made observations that the jury could easily come to by themselves.  Even if the Court were to conclude that some of Zaino's testimony was improper, however, Welty cannot establish that its admission affected his substantial rights.  As Welty concedes, he had an opportunity to cross examine Zaino on his allegedly improper testimony.  Welty Mem. 28; *see generally* Tr. 1570-1696.  And there was a vast amount of other evidence of Welty's guilt, as explained further below.

### 2.  Even if Zaino's Testimony was Improperly Admitted, this Error does not Create a Substantial Issue for Appeal

Even if the Court improperly admitted Zaino's testimony on certain Count Four transactions, this error would be harmless and unlikely to result in reversal of any counts on appeal.  *See Rigas*, 490 F.2d at 223 ("Even if evidence is improperly admitted, reversal is warranted only if an error affects a substantial right, Fed.R.Evid. 103(a)—that is, if the error had a substantial and injurious effect or influence on the jury's verdict.") (internal quotations omitted).  As stated at pp. 16-17 above, the evidence against Welty is overwhelming and the Court's error would have had little effect on the jury's verdict.  On Count Four alone, the Government introduced recorded audio evidence where the jury could hear that Welty was

blatantly rigging bids with Peter Grimm.  For example, on the Catholic Health Initiatives deal, Welty asked Grimm, "Uhm, who you wanna go against?" and Grimm gave Welty a list.  GX-605507, Tr. 1172-73, 1174-75.[12]  The jury could also compare GX-14-9, the bid summary for this deal, to see who was on the bid list and who was not.  Tr. 1174-76.  Likewise in the Rhode Island Housing transaction, Welty asks Grimm "Uhm, hey who do you wanna see in this thing?" and "Who don't you want [bidding]?"  GX-11906, Tr. 1103-04.[13]  There is similarly damaging evidence and testimony on Counts One and Two, see pp. 16-17.  For example, the jury heard Welty ask co-conspirator Campbell to back off the Rhode Island Tobacco transaction.  GX-204408(B); Tr. 2441-45.  Indeed, the jury heard approximately two dozen incriminating recordings that included Welty.  *See* Ex. D (Ct. Ex. 26).

Furthermore, there would be no spillover prejudice from improperly admitted testimony that would warrant reversal of Counts One and Two in addition to Count Four, as Welty argues. Welty Mem. 31-35.  "When confronted with a problem of taint, [the Second Circuit]  must consider whether the presence of the invalidated count had any spillover effect sufficiently prejudicial to call for reversal of the remaining counts."  *Rooney*, 37 F.3d at 855 (quotations omitted).  Welty cannot meet this burden and establish such prejudice in the Court of Appeals. Zaino was by no means the only witness to implicate Welty, see *supra* pp. 16-17, and his testimony could not overwhelm the remaining incriminating evidence on Counts One and Two against Welty in the record, some of which is discussed above pp. 16-17.  *Cf. Rooney*, 37 F.3d at 856 ("It is only in those cases in which evidence is introduced on the invalidated count that

---

[12]  Welty did not object the admission of this tape against Welty, but rather the testimony concerning it.  Tr. 1172.  The jury also had the transcript of the call displayed while it was being played.

[13]  Similarly, Welty did not object to the admission of this call and the transcript was displayed for the jury.  Tr. 1101.

would otherwise be inadmissible on the remaining counts, *and* this evidence is presented in such a manner that tends to indicate that the jury probably utilized this evidence in reaching a verdict on the remaining counts, that spillover prejudice is likely to occur.").

Thus, none of Welty's arguments regarding Zaino's testimony raise a substantial question and they do not warrant bail pending appeal.

## CONCLUSION

For the reasons stated above, Defendants' respective motions for bail pending appeal should be denied.

Dated:  October 7, 2013

New York, New York

Respectfully submitted,

/s/ Jennifer M. Dixton
_____

MARC SIEGEL                          KALINA M. TULLEY
Acting Chief, New York Field Office   JOHN W. VAN LONKHUYZEN
Antitrust Division                    JENNIFER M. DIXTON
United States Department of Justice

Trial Attorneys, Antitrust Division
United States Department of Justice
209 South LaSalle Street, Suite 600
Chicago, IL 60604
(312) 353-7530