# Poe & Burton pllc
## The Executive Building
## 1030 15th Street, N.W., Suite 580 West
## Washington, D.C. 20005
### www.poeburton.com

Tel: (202) 583-2500                                                      gpoe@poeburton.com
Fax: (202) 583-0565

November 8, 2013

The Honorable Kimba M. Wood
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *United States* v. *Michael Welty*, 1:10-cr-01217-KMW-3

Dear Judge Wood:

      We write on behalf of defendant Michael Welty with respect to Your Honor's October 18, 2013 order that defense counsel "must advise the Court by November 8, 2013, whether their motion for relief can be filed by November 15, 2013." Dkt. 423 (endorsed letter).

      Counsel for Mr. Welty has conducted a non-exhaustive review of documents in the database produced by the government on October 16, 2013. As discussed below, we otherwise would anticipate being in a position to file a new trial motion by November 15, 2013 (a date originally suggested by the government in its October 18, 2013 letter to the Court at page 8, footnote 9), but the government has not yet answered many of the questions that we have posed concerning the production of the CDR documents. Accordingly, our view is that it would be more productive to proceed as we suggest below in the last paragraph. Although we believe that Mr. Welty's motion for release pending appeal is meritorious for each of the reasons set forth in our pleadings, and that consideration of a motion for a new trial is not necessary to decide Mr. Welty's motion for release in his favor, the basis that we have discovered for a new trial motion is directly related to our argument that error occurred under Fed. R. Evid. 701 as a result of Mark Zaino's opinion testimony at trial. Given the relationship of our anticipated new trial motion to a central issue in Mr. Welty's appeal, we believe that it is in Mr. Welty's interests to file the motion for a new trial as promptly as possible.[1]

---

[1]  Based on our work since October 16, 2013, we do not anticipate discovering additional grounds for a new trial motion in the documents produced by the government on October 16, apart from the grounds that we discuss in this letter and that we will set forth in our anticipated motion. Of course, in the event that Mr. Welty has any reason to file a new trial motion on any additional ground within the time period permitted by the rule, we respectfully reserve his right to do so.

POE & BURTON PLLC

The Honorable Kimba M. Wood
November 8, 2013
Page 2

     The documents produced by the government on October 16, 2013, include an email dated March 16, 2005 (CDR-BoA-00214570) from Douglas Goldberg at CDR to Jeffrey Ziglar at UBS with Matthew Rothman at CDR and Mr. Welty at UBS included on the distribution list.  The email concerns a dispute between Messrs. Welty and Ziglar, on the one hand, and Messrs. Goldberg and Rothman, on the other, with respect to whether UBS had bid on an escrow transaction in which CDR acted as the broker on behalf of the Idaho Health Facilities Authority (IHFA) as the issuer.  As we will show in our new trial motion, Messrs. Goldberg and Rothman claimed that UBS had bid on the transaction and attempted to award the deal to UBS.  Messrs. Welty and Ziglar took the position that UBS had provided only an indication, not a bid, and that no basis existed to conclude that any binding agreement existed as to UBS with respect to the transaction.  Mr. Goldberg's email states (in response to an email from Mr. Ziglar stating, "For the record, no trade has been done with UBS on this deal."): "<u>For the record until I hear a tape using the word indication we are not through with this conversation!</u>" (emphasis added) ("Goldberg Email").  We will submit a declaration from Mr. Ziglar as part of the new trial motion.

     The Goldberg Email is newly discovered evidence.  The government itself acknowledges, in a spreadsheet produced to defense counsel on October 21, 2013, that the Goldberg Email has no counterpart in the documents produced by UBS before trial.  Furthermore, we have confirmed with our discovery vendor that the Goldberg Email does not exist anywhere in the database of documents that our vendor created using the data produced by the government before trial.

     As we will show in a new trial motion, the Goldberg Email would have changed the jury's consideration of the three conspiracy counts on which Mr. Welty was convicted.  The document reflects that Mr. Goldberg was prepared to concede the IHFA dispute if UBS could produce an audio recording using the word "indication."[2]  The Goldberg Email shows that Mr. Goldberg's categorical differentiation of an "indication" and a "bid" is precisely the distinction drawn by counsel for Mr. Welty at trial during witness examinations and in summation, and supports Mr. Ziglar's testimony on the same issue in the defense case.  No less important, Mr. Goldberg's differentiation contradicts Mr. Zaino's testimony that Messrs. Grimm and Welty meant "bid" when they used the word "indication" on the audio recording in the Rhode Island Housing transaction that formed the basis for the government's theory of wrongdoing in the Welty-Grimm transactions in Count 4.  The document would have allowed Mr. Welty to attack the government's key cooperator (Mr. Zaino) on a core issue in the trial with evidence from other government

---

[2]  As we will show, other documents concerning the IHFA transaction demonstrate that UBS did not make any such recording, which is consistent with the evidence at trial with respect to taping on the UBS desk.  As a government exhibit (GX-50-21) shows, the transaction was not consummated with UBS.

POE & BURTON PLLC

The Honorable Kimba M. Wood
November 8, 2013
Page 3


cooperators (Messrs. Goldberg and Rothman) whose testimony against Mr. Welty, as we have shown in our motion for release pending appeal, was limited.  And, it would have allowed Mr. Welty to attack the government's summation (in which, among other things, the government used a demonstrative characterizing "indications" as "initial bids" and argued to the jury that "indications" were actually "bids") as inconsistent with the categorical position of its own witness. We anticipate that we will request an evidentiary hearing on the motion for new trial and will seek to examine Messrs. Goldberg and Rothman with respect to the IHFA transaction and the issues implicated in the motion.  See, *e.g.*, *United States* v. *Petrillo*, 237 F.3d 119, 124 (2d Cir. 2000) (whether to conduct evidentiary hearing on motion for new trial is within discretion of district court); *United States* v. *Camacho*, 163 F. Supp. 2d 287, 313 (S.D.N.Y. 2001) (holding evidentiary hearing).[3]

As noted above, we otherwise would anticipate being in a position to file a new trial motion by November 15, but the government has not yet answered many of the questions that we have posed concerning the production of the CDR documents.  Moreover, the government informed the Court in its October 18 letter that it "continues to investigate the matter" and was "unable to report to the Court in detail" at that time.[4]  We first raised the issue of the CDR documents in a letter to the government dated September 9, 2013, immediately after we learned about the CDR documents from a third party.  See Exhibit 1.  After conferring with defense counsel, the government responded in a letter dated September 30, 2013.  See Exhibit 2.  Counsel for Mr. Heinz wrote a letter to the Court on behalf of Mr. Heinz on October 11, 2013.  Dkt. 421.  By letter dated October 15, 2013, the government produced the CDR documents.  See Exhibit 3.

---

[3] In our view, the Goldberg Email is *Brady* material on its face.  Nonetheless, although the government now knows in detail (from the trial, the sentencing proceedings, and the briefs in support of Mr. Welty's motion for release pending appeal) our theories and arguments on behalf of Mr. Welty, the government states in its October 18 letter (Dkt. 423 at 2) that it "has not found any *Brady* material" even in the small number of emails that it has isolated with Mr. Welty as a sender or recipient (among them the Goldberg Email).  The government further states that materials produced on October 16, 2013, "relate at most to Count 2" and are "not relevant" to Counts 1 and 4.  Dkt. 423 at 2.  But that view fails to take into account the interconnected nature of the evidence and witnesses on the conspiracy counts, and fails to account for how the Goldberg Email would have been used to Mr. Welty's advantage with respect to all three conspiracy counts (for example, to undercut Mr. Zaino's testimony).

[4] We disagree with many statements in the government's October 18 letter to the Court.  We leave those issues aside for present purposes except to note the inaccuracy of the government's statement that defense counsel said during the September 26 conference call that "they did *not* want converted, processed emails, and were only interested in discussing the underlying data files and production history."  Dkt. 423 at 4 (emphasis in original).  We did not expect the government to be unable to answer our questions concerning the data and production history expeditiously.

POE & BURTON PLLC

The Honorable Kimba M. Wood
November 8, 2013
Page 4


On October 16, 2013, we wrote another letter to the government.  See Exhibit 4.  Thereafter, the government wrote the letter to the Court dated October 18, 2013.  Dkt. 423.  On October 21, 2013, the government wrote to defense counsel and produced spreadsheets concerning a small subset of the CDR documents.  See Exhibit 5.  Apart from the October 21 letter and its enclosures, we have not yet received any communication from the government concerning the CDR documents since we received the government's October 18 letter to the Court.

It is unclear to us whether the government will take the position that any of the CDR documents that do not have corresponding documents in UBS's pretrial production are not "newly discovered" or whether, if any of the documents that we intend to present as newly discovered exist in unreadable file format in a pretrial production, the government will claim that the evidence is not newly discovered.  We respectfully submit that the most efficient route would be for the government to complete its investigation expeditiously and state its position concerning newly discovered evidence.  Two months have passed since we wrote our September 9 letter (Exhibit 1) after we were alerted to the issue of CDR documents by a third party.  More than seven months have passed since the government became aware of the CDR documents issue.  Dkt. 423 at 2.  We are hopeful that the government will be able to answer our questions imminently.


Sincerely,

Gregory L. Poe


Enclosures

cc:    Kalina M. Tulley
       John L. Van Lonkhuyzen
       Jennifer M. Dixton
       Charles A. Stillman
       James A. Mitchell
       Marc L. Mukasey
       Jonathan N. Halpern
       Preston Burton